No. 19,241.

## In re PORTER PATTERSON, *Petitioner.*

### SYLLABUS BY THE COURT.

HABEAS CORPUS—*Paroled Prisoner—Violation of Parole—Recommitment to Prison—Statute Constitutional—Writ Denied.* A parole granted by the district court or a judge thereof under section 2 of chapter 178 of the Laws of 1907 (Gen. Stat. 1909, § 2460), containing a provision that upon satisfactory information that the conditions of the parole have been violated the court or judge is authorized to revoke the parole and cause the convict to be reimprisoned under the sentence pronounced by the court without notice or hearing, may be revoked by the court or judge and the convict may be recommitted to serve out his sentence without either notice or hearing, and such action is not a violation of the constitutional guaranty that no person shall be deprived of his liberty without due process of law, nor of the other guaranty that no warrant shall issue except on probable cause supported by oath or affirmation.

Original proceeding in habeas corpus. Opinion filed March 6, 1915. Petitioner remanded.

*J. J. Schenck,* of Topeka, for the petitioner.

*W. E. Atchison,* county attorney, for the respondent.

The opinion of the court was delivered by

JOHNSTON, C. J.: The petitioner, Porter Patterson, seeks a writ of habeas corpus to secure his release from the custody of the sheriff of Shawnee county. Under

the agreed facts it appears that on or about November 4, 1911, the petitioner entered a plea of guilty to four counts for the violation of the prohibitory liquor law and was sentenced to twelve months' imprisonment and to pay a fine and costs amounting to $752.50. On January 3, 1912, the petitioner was found guilty of contempt of court in failing to obey a liquor injunction and was sentenced to pay a fine of $500 and to six months' imprisonment, the sentence to begin at the expiration of the one mentioned next above, and to pay the costs, amounting to $152.75. Petitioner remained under these two sentences of imprisonment until January 18, 1913, when he was paroled under an agreement with the county attorney that judgment in an action begun on November 21, 1911, should be rendered against the petitioner and his wife, declaring the costs accruing in the two above-mentioned cases, amounting to $405.25, to be a first lien upon petitioner's homestead. On July 11, 1913, upon the application of the county attorney, the homestead was sold for $299.49. On December 13, 1913, upon the oral application of the county attorney, the parole of the petitioner was revoked for violation of its conditions, and without notice to him, the county attorney and sheriff representing that petitioner had on that day been arrested on a state warrant charging violations of the prohibitory liquor law, and the petitioner was recommitted to custody. On April 16, 1914, petitioner was convicted of three sales of intoxicating liquor made between the time of granting the parole and the time of revoking it and sentenced to the pententiary as a persistent violator, from which sentence an appeal, which is still pending, was taken to this court. As the order of parole had been lost before entry a *nunc pro tunc* entry was made on December 19, 1913, as of January 18, 1913, by the second division of the Shawnee county district court paroling the petitioner.

The petitioner insists that the revocation of the

parole and his recommitment to prison without notice and hearing, and without the filing of an affidavit as the basis for an order for rearrest, trenched upon his constitutional rights and deprived him of his liberty without due process of law. The legislature has authorized the district courts to parole prisoners convicted of violations of the criminal laws of the state. The act contains many provisions defining the conditions upon which paroles may be granted and revoked and providing the procedure in the granting of paroles to the different classes of convicts and of revoking them. The only provision necessary to be considered in the disposition of the question presented here is the following:

"The courts named in section 1 of this act, or the judge thereof in vacation, subject to the restrictions hereinafter provided, may, in their discretion, when satisfied that any person against whom a fine has been assessed or a jail sentence imposed by said court, or any person actually confined in jail under judgment of a justice of the peace, city court, or other like inferior court, but not police court, will, if permitted to go at large, not again violate the law, parole such person and permit him to go at large, upon such conditions and under such restrictions as the court or judge granting the parole shall see fit to impose; such court or judge may at any time, without notice to such person, terminate such parole by simply directing execution to issue on the judgment, or, in case the person shall have been actually confined in jail, the parole may be terminated by directing the sheriff or jailer to retake such person under the commitment already in his hands. After the parole has been terminated, as above provided, the court or judge may in his discretion, after the payment of all costs in the case, grant a second parole, but no more than two paroles shall be granted the same person under the same judgment of conviction. If a parole shall be terminated, the time such person shall have been at large on parole shall not be deducted from the time he shall be required to serve, but the full amount of the fine shall be collected or the full time in jail be served, the same as if no parole had been granted." (Gen. Stat. 1909, § 2460.)

The parole granted under this provision is not the vacation of the sentence imposed nor is it a commutation of the punishment. It suspends the execution of the penalty and temporarily releases the convict from imprisonment upon conditions which he is at liberty to accept or reject. A parole is granted by the court at its discretion and upon the theory that punishment is not the sole purpose of a prosecution and conviction, but that the reform and improvement of a prisoner is a matter of great importance. The legislature was evidently actuated by the thought that prisoners convicted might be reformed and society at the same time protected by a suspension of the sentence and a release from imprisonment upon conditions which the court might determine would be most helpful and effective. Although the prisoner is conditionally released, the sentence is not set aside nor is the offense expiated. He is still under the supervision of the court and subject to be remanded to prison if he fails to perform or violates the conditions of the parole. The statute expressly provides that the court may grant the parole on such conditions and under such restrictions as it may see fit to impose. In its discretion it may attach any conditions to the parole that are not immoral, illegal or impossible of performance, and as the authority is to be exercised by a court or judge it is expressly provided that the parole may be terminated at any time and the convict remanded to prison without notice to him. It is competent for the legislature to provide that the court may, upon information that is satisfactory to it, revoke the parole and summarily remand the convict to prison to serve out a sentence legally imposed. The failure of the convict to observe the conditions of a parole is not a new offense, and the revocation of the parole and the returning of the convict to prison is not an added punishment for the offense of which he was convicted nor a punishment for any other offense, but it is rather a disciplinary regulation of prison management in carrying out the sentence of the law already imposed and grow-

*In re* Patterson.

ing out of the effort to ameliorate the condition of the convict. There was, therefore, no occasion for the making of an affidavit before petitioner's rearrest, nor any necessity for the filing of an information or indictment, nor for providing a trial by a jury. The rights which he is insisting upon and which are guaranteed to him by the constitution were accorded to him when he was arrested and prosecuted for the offense of which he was convicted and for which he is now imprisoned. The legislature might have required that notice be given to him and others, and also that there be a hearing as to the violation of the conditions of the parole before revoking it and remanding him to prison, but instead of that the legislature expressly provided that there might be a revocation without notice to him. The petitioner obtained a parole knowing of this provision of the statute and that the parole might be revoked by the court without notice, and, more than that, it was one of the conditions written in the parole which the petitioner sought and accepted. The conditions were that he should refrain from selling intoxicating liquors or keeping them for sale or to be drunk upon his premises and also from violating the prohibitory and other laws of the state or the ordinances of the city, and it was expressly stated that if he violated the provisions of the parole he would be summarily recommitted to the jail, and that the judge might, upon information to his satisfaction of the violation of the parole, recommit the petitioner to jail without either notice or hearing. The petitioner was at liberty to accept the parole with the conditions attached or to decline it and serve out the sentence imposed, but when he accepted it he, in effect, agreed to all the conditions of the parole, and, among them, that when the judge or the court became satisfied that he had violated the conditions of the parole it might be terminated without notice to him and he be recommitted to jail to complete his sentence. Among the authorities which support the theory that by accepting a parole the convict ac-

cepts it subject to its conditions and restrictions and is bound to comply with them the following may be cited: *Woodward v. Murdock,* 124 Ind. 439, 24 N. E. 1047; *Spencer v. Kees,* 47 Wash. 276, 91 Pac. 963; *Fuller v. The State,* 122 Ala. 32, 26 South. 146, 45 L. R. A. 502, 82 Am. St. Rep. 1; *Ex parte Ridley,* 3 Okla. Cr. Rep. 350, 106 Pac. 549; *People v. Marsh,* 125 Mich. 410, 84 N. W. 472, 51 L. R. A. 461, 84 Am. St. Rep. 584; *Ex parte Marks,* 64 Cal. 29, 28 Pac. 109, 49 Am. Rep. 684; *Ex Parte: William Wells,* 59 U. S. 307, 15 L. Ed. 421; *United States v. Wilson,* 32 U. S. 150, 8 L. Ed. 640; *Ex Parte Alvarez v. The State of Florida,* 50 Fla. 24, 39 South. 481, 111 Am. St. Rep. 102.

The authorities are not uniform as to the effect of paroles and conditional pardons nor as to the methods that may be employed in revoking them. The differences depend largely on whether the officers taking the action are clothed with full power in the matter of paroles and conditional pardons or whether the action has been taken by subordinate officers or boards with limited powers, or as to the extent of the legislative authority conferred upon such officers, and also as to the conditions that were written in the parole and under which it was granted and accepted. There is abundant authority for the view taken by this court—that where there has been a release the court or judge, when satisfied that the conditions under which it has been granted have been violated, may revoke the parole and cause the rearrest of the convict and his return to prison without notice or hearing, and that this does not deprive the convict of his liberty without due process of law nor violate the other guaranty that no warrant shall issue except upon probable cause supported by oath or affirmation. Here the power is exercised by a court or the judge thereof upon an express provision of the statute and in accordance with the conditions of the parole, and hence the case does not fall within some of the cases cited in opposition to the exercise of the power. Authorities supporting the exercise of the

*In re* Patterson.

power and the view herein expressed are *Ex parte Ridley,* supra; *Owen v. Smith,* 89 Neb. 596, 131 N. W. 914; *Woodward v. Murdock,* supra; *Kennedy's Case,* 135 Mass. 48; *The State ex rel. Attorney-General v. Peters,* 43 Ohio St. 629, 4 N. E. 81; *Fuller v. The State,* supra; *State v. Hunter,* 124 Iowa, 569, 100 N. W. 510, 104 Am. St. Rep. 361.

It is fair to infer that the court would have given consideration to any evidence that the petitioner might have chosen to present tending to show that the information upon which the revocation had been made was not correct if application had been made. Instead of applying to the court, which is always ready to ascertain the real facts and correct any errors it has made of fact or law, the petitioner chose to stand on the naked question that the court had no power to make an *ex parte* order and that the revocation was absolutely void. His action may be accounted for, in part at least, by a stipulation in the record that the petitioner, who had accepted the parole on condition that he would refrain from violating the prohibitory liquor law, had been convicted of violations of that law while he was out on parole and had been convicted of being a persistent violator of that law. These convictions are strong evidence that the conditions of the parole had been violated.

The petitioner will be remanded.

DAWSON, J., not sitting.