No. 32,828

ONETA BOWERS and RUTH HANNUM, *Appellees,* v. O. W. WILSON, Chief of Police of the City of Wichita, THE CITY OF WICHITA et al., *Appellants.*

(56 P. 2d 1212)

Opinion filed April 28, 1936.

*Vincent F. Hiebsch, K. W. Pringle* and *Forest C. McCalley,* all of Wichita, for the appellants.

*T. A. Sullivan* and *John F. Eberhardt,* both of Wichita, for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This was a habeas corpus proceeding in which the district court ordered the discharge of two women whose paroles had been revoked by the police judge of the city of Wichita. From the order discharging the prisoners respondents have appealed.

Respondents are the chief of police and the police judge of the city of Wichita. Petitioners were on the 6th day of May, 1935, arrested by a police·officer in the city of Wichita, on the grounds of having narcotics in their possession, for vagrancy and as dope fiends. They pleaded guilty to the charge of vagrancy and were sentenced to one year in the city jail. On the 29th day of July, 1935, petitioners were paroled by the police judge. The police records did not disclose the conditions imposed by the paroles. In the habeas corpus proceedings there was conflict of evidence with regard to the conditions imposed. On behalf of petitioners there was evidence they were paroled on the condition they leave the city of Wichita, and remain away for a period of one year. One of them also testified that she spoke to the police judge and inquired whether she could return to the city of Wichita for the purpose of procuring a divorce, and that she was told she could return at any time. The verified return of the writ signed by the police judge specifies the conditions of the paroles as follows: "On condition that they leave the city of Wichita and remain outside of said city until one year after May 6, 1935, and that they violate no law of the state of Kansas or ordinance of the city of Wichita." As to leaving the city of Wichita the evidence of respondents was that petitioners desired to leave the city of Wichita and return to Oklahoma City, where they had relatives. In other words, that petitioners suggested that condition themselves. Respondents did not rely upon the condition of petitioners leaving the city of Wichita as a valid condition of parole, but contended that since petitioners sought a parole on the ground they leave the city of Wichita, they should not be permitted to violate their own promise in that regard and thus avoid serving the remainder of their sentence. Respondents contended the other conditions of the paroles were also violated.

When petitioners were originally apprehended one of them had morphine in her possession which she had obtained at a drugstore under a prescription from a doctor. She stated to the officer she was going to use the morphine by reason of a head injury. On that

occasion the officers found cooking outfits and eight needles, together with a spoon and a tobacco can lid used for dope in petitioners' rooms. Petitioners returned to Wichita on about the 12th day of August, 1935, and were again apprehended by the police, and the paroles were revoked. There is a conflict of evidence as to whether there was a hearing at the time the paroles were revoked. In the habeas corpus proceeding the arresting officer testified he arrested petitioners in an alley about ten o'clock at night on August 12 while they were talking to a man back of a lunch room. He stated:

"They were doped up and they talked rather incoherently. He couldn't understand all that they were saying. They had trouble in maintaining a perfect equilibrium. They had a hazy look in their eyes, and to his knowledge were under the influence of dope. There was no smell of liquor upon them. The women were not searched at the time, but certain dope equipment was taken off of them by the matron. . . . When petitioners first noticed him while in the alley they started to run. . . . He picked the petitioners up because of the condition they were in. . . . That the buildings were not flush with the alley; that some of them were set back a short distance resulting in dark recesses. It was back in one of these recesses that he saw the petitioners."

In the course of the examination of the police judge he testified:

"There is no such charge as use of narcotics or being a narcotic addict, except that when it is used the user becomes drugged or intoxicated and they violate the ordinance against drunkenness. At the time they were first arrested they were charged with 'narcotics in possession; vagrancy and dope addict,' as shown by the record. They were sentenced only on the charge of vagrancy. Vagrancy includes prostitution. It is a violation of the ordinance to have possession of narcotic needles or equipment."

During the trial in the district court Ruth Hannum, one of the petitioners, testified concerning the occasion of August 12, when they were picked up in the alley, as follows:

"She had not been using dope and never used it. Her sister, the other petitioner, had the dope equipment, consisting of a needle, little cooking utensil and the syringe, in her purse. She and her sister had been together at all times since leaving the city. Her sister was not on dope. She suffered from her head and had taken a little at times. She had been injured when a child. At the time she was arrested in May she was not working. She was living at 805 N. St. Francis avenue by herself. Her sister lived at the same place and was just keeping house. Her husband, who was separated from her, came to see her once in a while. He was paying her room rent and their people were helping to support them."

The captain of the police department and head of the vice squad, testified concerning the occasion on August 12 and 13, as follows:

"He saw them at the time they were first brought into the station. At that

time, from his observation, they needed a shot of morphine. He saw them the next morning after they were picked up on August 12. They looked at that time as if they had been drunk.

"He knew their general reputation over on Elm street and Maple, that they were hustling girls. At the time they were paroled they were paroled on the condition that they would not violate any of the state laws or the city ordinances. . . .

"That at the time they were paroled they said they wanted to go to Oklahoma. They were then paroled for a year from the date of the first sentence. . . .

"According to the records·they had been convicted of narcotics in possession in Oklahoma. He had seen the conviction records, being the D. J. record from Washington. Witness had known them seven or eight months at the time he first investigated them before their first arrest. He had complaints from neighbors that they were hustling.· He saw them sitting in the window on several occasions when the window would be open."

During a recess period of the hearing in the district court, one of the petitioners was married to a party who was interested in obtaining a parole for petitioners. After this incident the court continued the hearing until a later hour in the day and directed respondents to investigate the record of the man to whom that petitioner had been married. When court resumed this party testified as follows:

"That he was engaged in the contracting business for himself. He was willing to have the sister of his bride come and live with him."

The party was a painter by trade. The police records disclosed nothing against him. The trial court discharged the petitioners.

There was evidence petitioners were residents of the city of Wichita, and the trial court so found. There is much other evidence, but it is not deemed germane to the real issues here involved. The trial court also found there could not be a revocation of the paroles because there had not originally been a legal conviction or a legal parole. We need not discuss the legality of the conviction nor the legality of the length of sentence under the ordinance. Petitioners now admit the vagrancy ordinance of the city of Wichita is valid, so far as the length of punishment it authorizes is concerned. They also admit the validity of the original conviction is not in issue. The trial court, after hearing the conflicting evidence, found no offense was shown upon which a revocation of the paroles might be ordered.

This brings us squarely to the main issue in the case. This proceeding arose as a result of the termination of the paroles. Has the. district court authority to review the action of the police judge relative to his revocation of a parole?

This case was not taken to the district court by appeal from the order revoking the paroles. Petitioners contend the district court has general supervisory power over inferior courts in addition to its appellate jurisdiction. We are also reminded that in the city of Wichita, the police judge is an appointee of the district judges. (R. S. 1933 Supp., 13-628a, 13-628b). District judges are not district courts. The police judge is not an appointee of the district court. Furthermore, the power to appoint does not in itself include supervisory power over an appointee. Petitioners, however, insist R. S. 20-301 specifically provides such general supervisory power. It reads:

"There shall be in each county organized for judicial purposes a district court, which shall be a court of record, and shall have general original jurisdiction of all matters, both civil and criminal (not otherwise provided by law), and jurisdiction in cases of appeal and error from all inferior courts and tribunals, and shall have a general supervision and control of all such inferior courts and tribunals, to prevent and correct errors and abuses."

This proceeding in habeas corpus was conducted on the theory the district court was vested with general supervision and control over the police court. It seems it was the belief of petitioners and the trial court that the district court had full authority to consider the term of the sentence, the conditions upon which the paroles were granted, and that it possessed the authority to weigh the evidence on which the paroles were revoked, and had the right to finally determine whether the judgment of the police judge was properly exercised in revoking the paroles. In other words, it was apparently the position of the petitioners and the trial court that the district court was authorized in proceedings in habeas corpus to review the entire record and correct errors of judgment and abuse of discretion.

R. S. 12-1103 reads:

"The judge of the police court in cities of the first and second class shall have power, as hereinafter provided, to parole persons convicted of a violation of the ordinances of said city."

The pertinent portion of R. S. 12-1104 reads:

"The judge of the court named in section 1 of this act, subject to the restrictions hereinafter provided, may, in his discretion, when satisfied that any person against whom a fine had been assessed or a jail sentence imposed by the court, or any person actually confined in the city jail under the judgment of said court, will, if permitted to go at large, not again violate the law or ordinance, parole such person and permit him to go at large, *upon such conditions and under such restrictions as the judge granting the, parole shall see fit to impose."* (Italics inserted.)

Relative to conditions which may be imposed upon the granting of a parole by the district court, R. S. 62-2202 is the same as R. S. 12-1104. In commenting upon the provisions of R. S. 62-2202, this court in the case of *State v. Harris,* 116 Kan. 387, 226 Pac. 715, said:

"This furnishes sufficient authority for the court to require a bond or fix any other condition which is not immoral, illegal, or impossible of performance. In a similar case it was said:

" 'The statute expressly provides that the court may grant the parole on such conditions and under such restrictions as it may see fit to impose. In its discretion it may attach any conditions to the parole that are not immoral, illegal or impossible of performance. . . . The petitioner was at liberty to accept the parole with the conditions attached or to decline it and serve out the sentence imposed, but when he accepted it he in effect agreed to all the conditions of the parole,' etc. (*In re Patterson,* 94 Kan. 439, 442, 443, 146 Pac. 1009.)" (p. 389.)

In the case of *Gray v. Graham,* 128 Kan. 434, 278 Pac. 14, it was held:

"Ordinarily when one accepts the terms of a parole he is deemed to have agreed to the conditions named therein." (Syl. ¶ 2.)

In that case it was contended the words "go at large" meant without constraint or confinement, but this court said:

"But as used in the statute, the words indicate the maximum liberty of movement which may be granted. This broad meaning is restricted by what follows: 'to go at large, upon such conditions and under such restrictions as the court . . . shall see fit to impose.' This seems to give the court almost unlimited authority to impose conditions and restrictions on the permission of one paroled to go at large." (p. 436.)

In the same case it was further said:

"He was at liberty to accept or reject the conditions. (*In re Patterson,* 94 Kan. 439, 146 Pac. 1009.) He did accept them, and is not in good position now to complain of them." (p. 436.)

In *In re McClane,* 129 Kan. 739, 284 Pac. 365, it was held:

"Where a defendant requests a parole after sentence and accepts the conditions thereof imposed by the trial court he cannot, after violation thereof, be heard to complain of its conditions or have the time counted on that of the original sentence." (Syl. ¶ 3.)

The above statutes and decisions clearly indicate the power of the paroling authorities. The conditions attached to the parole, however, are not the controlling factor in this case, as will directly appear.

Complaint is also made in the instant case on the ground the police judge abused his discretion in not granting the prisoners a hearing before revoking the paroles. The contention, if it was reviewable, is without merit. R. S. 12-1104 specifically provides:

"Such judge may at any time, without notice to such person, terminate such parole by simply directing execution to issue on the judgment; or, in case the person shall have been actually confined in jail, the parole may be terminated by directing the chief or captain of police or any police officer to retake such person under the commitment already in his hands."

In *In re McClane*, supra, this court held:

"When the conditions or restrictions of a parole, granted by the district court, have been violated and the court revokes the parole, the temporary suspension of the original sentence is ended and it immediately becomes effective and in operation, without any other action than the order of revocation." (Syl. ¶ 4.)

In the case of *In re Patterson*, 94 Kan. 439, 146 Pac. 1009, this court said:

"The legislature might have required that notice be given to him and others, and also that there be a hearing as to the violation of the conditions of the parole before revoking it and remanding him to prison, but instead of that the legislature expressly provided that there might be a revocation without notice to him." (p. 443.)

In the light of the foregoing decisions it follows there was nothing to review on the subject of notice or hearing relative to terminating the paroles. Furthermore, our legislature, wisely or unwisely, has seen fit to deny the right to review the action of a police judge with regard to refusing, granting or terminating paroles. (R. S. 12-1107.) The same is true as to action of district courts or judges pertaining to paroles. (R. S. 62-2214.) The statute here involved, R. S. 12-1107, reads:

"The action of the judge in refusing, granting or terminating a parole shall not be subject to review by an appellate court."

Petitioners counter with the contention this proceeding was not before the district court as an appellate court. They contend the district court, by virtue of R. S. 20-301, has general supervisory power over inferior courts in addition to its appellate jurisdiction. That statute was passed in 1868 and is general in its nature. R. S. 12-1107, subsequently passed in 1909, is specific legislation and expressly denies the right of an appellate court to review the action of the police judge in terminating paroles. In our view of the

statute the term "appellate court" was not intended to be employed in a restricted sense as referring only to a court to which an appeal had actually been taken, but instead the term was employed as referring to courts generally which do have appellate jurisdiction. If the district court has power under the provisions of R. S. 20-301 to supervise the action of the police judge with regard to paroles, it follows that court must review the evidence. It must review the discretion exercised by the police judge in granting or refusing a parole. It must review the evidence and discretion of the police judge in revoking paroles. This review is specifically forbidden by an express statute. We are therefore obliged to hold the legislature intended to limit courts in their supervisory and appellate power in this regard. To hold otherwise renders the provisions of R. S. 12-1107 inoperative and meaningless.

Petitioners finally insist this court cannot, on appeal, review the action of the district court relative to granting or terminating paroles. (R. S. 62-2214.) The district court did not grant or terminate a parole. It discharged the prisoners. From that order respondents appealed. We are determining the question of the authority of the district court to review the action of the police judge relative to terminating paroles. We hold the district court did not have such authority. In arriving at this result we have carefully examined decisions cited by petitioners. They are not contrary to, nor out of harmony with, the conclusion reached when considered in connection with the provisions of R. S. 12-1107 and the necessary construction placed thereon.

The order of the district court discharging the prisoners is a final order and as such is, of course, appealable. (R. S. 60-3302.) This court has appellate as well as original jurisdiction in habeas corpus proceedings. From what has been stated it follows the judgment of the district court must be reversed and petitioners returned to the custody of respondents. The time during which petitioners have been at liberty on parole is not to be credited on their sentence. (R. S. 12-1104.) It is so ordered.