No. 34,557

ROBERT L. STEPHENS, *Appellant,* v. ALBERT BERTRAND, Sheriff of Sedgwick County, *Appellee.*

(98 P. 2d 410)

Opinion filed January 27, 1940.

*P. J. Warnick,* of Wichita, for the appellant.

*Jay S. Parker,* attorney general, *Tom Harley,* county attorney, *Robert H. Nelson, Harold A. Zelinkoff, Grey Dresie, J. Ashford Manka, Dean L. Lachenmyer,* deputy county attorneys, for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This is an appeal from an adverse judgment in habeas corpus proceedings in which appellant sought to be released from jail in Sedgwick county.

By his petition for the writ and the sheriff's return thereto it appears that on April 26, 1937, the appellant had been sentenced to a term of six months in the county jail and to pay a fine of $500, consequent upon his conviction on a charge of violating the prohibitory liquor law. On appeal to this court that judgment was affirmed. (*State v. Stephens,* 146 Kan. 660, 72 P. 2d 975.)

Following such affirmance, the petitioner seems to have been incarcerated in the county jail for some time—the record is not clear on this point—and on April 15, 1938, he applied to the district court for a parole, which was granted. The record, in part, reads:

"Now on this 15th day of April, 1938, . . . it is ordered . . . that the defendant be paroled from serving the balance of the jail sentence and from paying the fine levied in this case, upon the condition that the defendant violate no laws of the state of Kansas for a period of two (2) years, and that he pay the costs of the action, including the parole officer's fees of two dollars ($2) per year."

. At the time the parole was granted the court (District Judge I. N. Williams presiding) stated to appellant the conditions of the parole and those were accepted. The court reporter's notes read:

"The Court: You will be paroled· from serving the balance of the jail sentence and the payment of the fine on condition that you do not violate the law and that you report to the court on the first of each term for a period of two years. Mr. Harley (county attorney) will tell you when that time is for .you to report; and there will be an additional $2 court costs for the parole officer. . . . This, you understand, is on condition that you do not violate the law.

"The Defendant: Yes, sir.

"The Court: And the court will not have to have any competent evidence to revoke this parole. If any complaint comes in concerning it, this parole will be revoked. People may come to me and you won't know who they are, and Mr. Harley may not know who they are. Citizens might come and report that you are violating the parole, and if they do your parole will be revoked. Do you want to accept the parole on that condition?

"The Defendant: Yes, sir.

"The Court: That will be a parole from this sentence. . . .

"The Defendant: Yes, sir.

"The Court: That's all."

On May 31, 1939, the court made an order which, in part, reads:

"The parole heretofore granted herein be and the same is hereby revoked and the defendant, Robert L. Stephens, is ordered committed to the county .jail to serve the balance of his jail sentence and to pay the fine heretofore imposed, and .the sheriff of Sedgwick county is hereby ordered to apprehend the said defendant and confine him to the jail of Sedgwick county, Kansas, to serve the balance of said jail sentence.

(Signed)   I. N. WILLIAMS, *Judge."*

. On application of appellant, Judge Williams allowed a writ of habeas corpus, and the sheriff made his return thereto, following which the cause was heard by Hon. Ross McCormick, judge of division No. 1 of the district court of Sedgwick county. At the insistence of counsel for appellant, Judge McCormick permitted evidence to be introduced *in extenso* by various witnesses—the clerk of the police court, the sheriff's clerk, the sheriff himself and his deputy, the parole officer of the court, and the clerk of the district court, all of whom testified that they had no information tending to show that appellant had violated his parole, and none of whom could give any intimation of the motive which had prompted Judge Williams to revoke the parole. By stipulation of counsel all files of earlier proceedings pertinent to the hearing were considered in evidence; and on June 26, 1939, the district court (District Judge McCormick pre-

siding) denied the writ, and the matter is brought here for review.

On the threshold of this review we encounter a barrier to any consideration of the matters assigned as error. That barrier is the statute which confers on the district court the power to grant paroles to persons convicted of crime. (Laws 1907, ch. 178, G. S. 1935, 62-2201 *et seq.*). Section 2 of that statute, in part, reads:

"The courts . . . or the judge thereof . . . may, in their discretion, when satisfied that any person against whom a fine has been assessed or a jail sentence imposed by said court, or any person actually confined in jail under judgment of a justice of the peace, city court, or other like inferior court, . . . will, if permitted to go at large, not again violate the law, parole such person and permit him to go at large, upon such conditions and under such restrictions as the court or judge granting the parole shall see fit to impose; such court or judge may at any time, without notice to such person, terminate such parole by simply directing execution to issue on the judgment, or, in case the person shall have been actually confined in jail, the parole may be terminated by directing the sheriff or jailer to retake such person under the commitment already in his hands. . . ." (G. S. 1935, 62-2202.)

Section 14 of the same statute, in part, reads:

". . . nor shall the action of any court or judge in granting or terminating a parole be subject to a review by an appellate court." (G. S. 1935, 62-2214.)

This court has repeatedly upheld the discretionary authority of the district court to revoke paroles. In the appeal of *In re Patterson*, 94 Kan. 439, 146 Pac. 1009, in which he complained of the summary revocation of his parole, this court, speaking through Chief Justice Johnston, said:

"The statute expressly provides that the court may grant the parole on such conditions and under such restrictions as it may see fit to impose. In its discretion it may attach any conditions to the parole that are not immoral, illegal or impossible of performance, and as the authority is to be exercised by a court or judge it is expressly provided that the parole may be terminated at any time and the convict remanded to prison without notice to him. It is competent for the legislature to provide that the court may, upon information that is satisfactory to it, revoke the parole and summarily remand the convict to prison to serve out a sentence legally imposed. The failure of the convict to observe the conditions of a parole is not a new offense, and the revocation of the parole and the returning of the convict to prison is not an added punishment for the offense of which he was convicted nor a punishment for any other offense, but it is rather a disciplinary regulation of prison management in carrying out the sentence of the law already imposed and growing out of the effort to ameliorate the condition of the convict. There was, therefore, no occasion for the making of an affidavit before petitioner's rearrest, nor any necessity for the filing of an information or indictment, nor for providing a trial by a jury. The rights which he is insisting upon and which are guaranteed

to him by the constitution were accorded to him when he was arrested and prosecuted for the offense of which he was convicted and for which he is now imprisoned. The legislature might have required that notice be given to him and others, and also that there be a hearing as to the violation of the conditions of the parole before revoking it and remanding him to prison, but instead of that the legislature expressly provided that there might be a revocation without notice to him. The petitioner obtained a parole knowing of this provision of the statute and that the parole might be revoked by the court without notice, and, more than that, it was one of the conditions written in the parole which the petitioner sought and accepted . . . and it was expressly stated . . . that the judge might, upon information to his satisfaction of the violation of the parole, recommit the petitioner to jail without either notice or hearing. The petitioner was at liberty to accept the parole with the conditions attached or to decline it and serve out the sentence imposed, but when he accepted it he, in effect, agreed to all the conditions of the parole, and, among them, that when the judge or the court became satisfied that he had violated the conditions of the parole it might be terminated without notice to him and he be recommitted to jail to complete his sentence." (pp. 442, 443.)

The syllabus of the same case, in part, reads:

"A parole granted by the district court or a judge thereof under section 2 of chapter 178 of the Laws of 1907 (Gen. Stat. 1909, § 2460), containing a provision that upon satisfactory information that the conditions of the parole have been violated the court or judge is authorized to revoke the parole and cause the convict to be reimprisoned under the sentence pronounced by the court without notice or hearing, may be revoked by the court or judge and the convict may be recommitted to serve out his sentence without either notice or hearing, . . ."

See, also, *In re Henry Millert*, 114 Kan. 745, 747, 220 Pac. 509; *State v. Harris*, 116 Kan. 387, 389, 226 Pac. 715; *Bowers v. Wilson*, 143 Kan. 732, 56 P. 2d 1212; *State v. Frame*, 150 Kan. 646, 95 P. 2d 278, syl. ¶ 3.

Counsel for appellant cite for our instruction the case of *State v. Zolantakis*, 70 Utah 296, 259 Pac. 1044, 54 A. L. R. 1463, in which it was held that a convicted violator of the prohibitory law who had been given a suspended sentence upon certain conditions was entitled to a judicial hearing before such suspension of sentence could be vacated and before an order was made recommitting him to prison. Doubtless that Utah decision, although rendered by a divided court, correctly interpreted the statute of that state. In that case it was said that "in the absence of statutory authority, district courts do *not* have inherent power to suspend sentences except for some specific temporary purpose." Our statute is unqualifiedly to the contrary.

The authorities hold generally that where the power of parole is conferred on the court by statute, its power to revoke such parole is not subject to procedural regulations unless they are likewise imposed by statute. (See Annotations, 54 A. L. R. 1471 *et seq.*)

This appeal is dismissed.