## McCOY v. HARRIS, Warden.

No. 6836.   Decided July 6, 1945.   (160 P. 2d 721.)

See 39 C. J. S., Habeas Corpus, sec. 101; 39 Am. Jur., 572.

*Lee N. Taylor,* of Salt Lake City, for plaintiff.

*Grover A. Giles,* Atty. Gen., and *Herbert F. Smart,* Deputy Atty. Gen., for respondent.

LARSON, Chief Justice.

By petition for a writ of habeas corpus, McCoy questions the right of the warden to detain him in the State Prison. The return of the warden shows as his authority for detaining McCoy a judgment and sentence of the district court, and a warrant of arrest issued by the State Board of Pardons. The traverse to the return attacks the validity of this warrant of arrest and the proceedings thereunder, raising the following questions:

1. Was McCoy brought back into the state without extradition proceedings and against his will and, if so, does

such action invalidate the order of the Board of Pardons revoking his parole and ordering his arrest?

2. Is a parolee from the State Prison entitled as a matter of law to hearing before the Board of Pardons before revocation of his parole?

3. Is an inmate of the State Prison, serving a term less than life, entitled as of right to good time allowance?

The facts giving rise to this proceeding are as follows: McCoy had been given a life sentence in the prison; this sentence was commuted by the Board of Pardons to 25 years; later he was paroled; he left the state and went into Wyoming, where he was arrested on a criminal charge. His parole was revoked by the Board of Pardons and the parole officer brought him back to Utah and he has since been confined in the State Prison.

Question 1 presents firstly a factual question—Was McCoy brought back into the state of Utah against his will or without waiver of extradition? To hear evidence upon this matter, a referee was appointed to take testimony, make advisory findings, and certify to this court a transcript of the evidence and the findings of the referee. In substance, the finding of the referee is that plaintiff waived his rights, if any, to remain in Wyoming until extradited and voluntarily came back into the state. In a proceeding of this nature the finding of the referee is advisory only, and we may examine the record de novo and make our own determination from the evidence. We have read the transcript and considered the findings of the referee. This court adopts the finding number 3, as follows:

"* * * that the Petitioner, Robert H. McCoy did not desire to fight or test the legality of his return to the State of Utah, nor did he object to returning to the State of Utah as a parole violator."

This conclusion disposes of question number 1 and we shall now discuss the second proposition herein.

Regarding the second question, whether a parolee is entitled to hearing before the Board of Pardons before revocation of his parole, there is a division of authority. Statutory provisions in the various jurisdictions differ, some specifically granting a hearing, others denying the ■ right to hearing before revocation. Section 67-0-7, U. C. A. 1943, provides that the Board of Pardons may permit prisoners to be paroled outside of the prison buildings under certain conditions. Section 67-0-8, U. C. A. 1943, reads:

"A prisoner while on parole shall remain in the legal custody and under the control of the chief adult parole and adult probation agent and the board of pardons, and shall be subject at any time to be taken back to the institution from which he was paroled. Full power to retake and reimprison any convict upon parole is conferred upon the board, whose written order certified by its secretary shall be sufficient warrant for all officers authorized to make arrests, or other persons named therein, to return to actual custody any such prisoner."

From the above provisions, it is clear that a parole is in the nature of a grant of partial liberty or a lessening of restrictions to a convicted prisoner. Granting of a parole does not change the status of a prisoner; it merely "pushes back the prison walls" and allows him the wider freedom of movement while serving his sentence. The paroled prisoner is legally in custody the same as the prisoner allowed the liberty of the prison yard, or of working on the prison farm. The realm in which he serves has been extended. He is in the custody of the state and serving his sentence outside of the prison rather than within the walls. The parole system is reformatory and founded upon a plan and policy of helping the inmate to gain strength and resistance to temptation, to build up his self control, to adjust his attitudes and actions to social controls and standards; and it aims to extend his liberties and opportunities for normal living within the social fabric as his strength to meet new responsibilities grows and develops.

While we have never passed on this question, it has been held in other jurisdictions that similar statutory provisions confer authority to revoke a parole without giving the prisoner any hearing. In *Fuller* v. *State*, 122 Ala. 32, 26 So. 146, 147, 45 L. R. A. 502, 82 Am. St. Rep. 17, under a statute providing:

"* * * the governor shall have authority to direct the rearrest and return of such convict to custody, and thereupon said convict shall be required to carry out the sentence of the court * * *",

it was held that revocation of a parole without hearing was proper. The court said that the statute gave that power to the governor, and that the statute did not infringe upon the constitutional guarantees of the convict. And in *Owen* v. *Smith, Warden*, 89 Neb. 596, 131 N. W. 914, 915, the statute involved provided that the governor had authority:

"* . * * to allow any such prisoner to go upon parole, outside of the inclosure of said penitentiary, to remain while on parole, within the state under the control and in the legal custody of the Governor, and subject at any time to be taken back within the inclosure of said institution; and full power to retake and reimprison any convict so upon parole is hereby conferred upon the Governor, whose written order shall be a sufficient warrant, for all officers named therein * * *."

The court held under such provisions that the governor might revoke a parole when he saw fit, without giving notice thereof or a hearing thereon to the convict. While the language of the above provisions is somewhat stronger than that of our statute, the power granted is the same. Under similar provisions, it was said in *Johnson* v. *Walls*, 185 Ga. 177, 194 S. E. 380, 381:

"Since this statute, thus operating, does not contain any provision for any prior notice or hearing before the revocation of a parole, such a requirement should not be read into the law."

The court goes on to say that therefore the prison commission may revoke paroles without such notice or hearing,

subject only to the provision that it may not act fraudulently, corruptly, or on personal caprice. For similar holdings, see also *Ex parte Smith,* 65 Okl. Cr. 393, 87 P. 2d 1106; *Ex parte Horine,* 11 Okl. Cr. 517, 148 P. 825, L. R. A. 1915F, 548 Practically all statutes authorizing and controlling the granting of paroles prescribe the persons by whom, and procedure by which, a parole violator may be recommitted. The Federal statute gives the Federal parole board and its members sole authority to issue a warrant and return a violator to prison. *Zerbst* v. *Kidwell,* 304 U. S. 359, 58 S. Ct. 872, 82 L. Ed. 1399, 116 A. L. R. 808. It is generally held that when the statute and parole are silent on the matter, the parole violator is entitled to notice and a hearing on the issues of his alleged violation. *Ex parte Ridley,* 3 Okl. Cr. 350, 106 P. 549, 26 L. R. A., N. S. 110; Anno. 54 A. L. R. 1474 et seq., and Anno. 132 A. L. R. 1254. But where the power to revoke is reserved in the parole or in the statute, the parole may be revoked by the parole authority for breach of condition without notice or hearing of any kind to the parolee. *Zerbst* v. *Kidwell,* supra; *In re Patterson,* 94 Kan. 439, 146 P. 1009, L. R. A. 1915F, 541; *Ex parte Horine,* supra; *Owen* v. *Smith,* supra; *Fuller* v. *State,* supra; Annotations 54 A. L. R. 1483, and 132 A. L. R. 1257; L. R. A. 1915F, 546.

In *State* v. *Zolantakis,* 70 Utah 296, 259 P. 1044, 54 A. L. R. 1463, this court held that before a probation may be revoked, the convicted defendant is entitled to hearing upon whether or not he has violated the conditions of the probation. And in *Williams* v. *Harris,* 106 Utah 387, 149 P. 2d 640, we held the same rule applies to probation in cases of the suspension of imposition of sentence. There are, however, some essential differences between the status of a parolee and a probationer. As noted in the Zolantakis case, the probationer is in that position by virtue of a judgment of a competent court. When judgment was imposed by the court that judgment included the stay of execution of the sentence upon conditions prescribed. Since a court

judgment fixes certain legal rights and responsibilities, they can only be modified or abrogated by the judicial process of notice and hearing.

In the case of a parolee, the judgment is a sentence and commitment. The legal position conferred upon the party by such judgment is the obligation to serve the designated term in prison. Until that sentence is terminated, the judgment committing him to the custody of the prison authorities is still in effect. The additional liberty conferred by the parole is a result of action by the Board of Pardons, an administrative body. The parolee is still in custodia legis, and under the control of the State Board, though outside prison walls. *Ex parte Taylor,* 216 Cal. 113, 13 P. 2d 906; *In re Heckman,* 90 Cal. App. 700, 266 P. 585. His being outside prison is not based upon or fixed by a judgment. Rules and regulations for the conduct of a paroled prisoner are rules and regulations for control of prisoners. *Matter of Stanton,* 169 Cal. 607, 147 P. 264. Violation of such rules is similar to violation of rules within the prison, and constitutes an abuse of a privilege for which the privilege may be withdrawn. Such rules confer no legal rights. They are privileges granted by the controlling authority, subject to its own terms, and may be withdrawn or withheld at its pleasure. *State* v. *Horne,* 52 Fla. 125, 42 So. 388, 7 L. R. A., N. S., 719; *State* v. *Almy,* 67 N. H. 274, 28 A. 372, 22 L. R. A. 744; *State* v. *Everitt,* 164 N. C. 399, 79 S. E. 274, 47 L. R. A., N. S., 848. The rule is based on the theory that a parole is granted, not as a matter of right, but as a matter of grace and privilege to enable the prisoner to prove himself, and that when he accepts it he, impliedly at least, agrees that it may be revoked according to the established practice of the granting authority. Legal institutions of the body socii should be largely concerned with the utilitarian measurable potentialities of a correctional regime. The administration of the criminal law must be realistic. Custom and opinion are the sources from which law draws its life juices. The administration of law cannot

be too far in advance or too far behind public opinion and custom without shriveling from lack of public support. The granting of paroles and the agencies dealing therewith are strategic measures for the task of reform and rehabilitation of offenders—persons who are within the control of the agencies of criminal justice. The effects of its actions and ministrations are not to be measured only in terms of its immediate results upon the individual paroled, but upon the vast majority of men who are, or might be, the beneficiaries of a parole. If the correctional aim of the criminal law is to succeed it must be predicated upon a less naive conception then that all prisoners can be treated alike, or that the violation of a trust and confidence reposed in one by the granting of a parole is a subject that allows of quibble and argument. If the parole system is to succeed it must be kept upon a basis that requires the parolee to exercise honest effort and the utmost good faith in living up to its conditions. A breach of conduct may be tolerated, but not a breach of faith. Each parolee must be made to realize that he has in his keeping not only his own liberty and future but that of all prisoners who in the future seek the opportunities that have been granted to him. For as each parolee makes good the chances of others are enhanced; and each that breaks his faith makes the road harder for those that follow. Digging pitfalls in the path other parolees must travel should be promptly and vigorously strangled. The parole system is not a part of the penal system but is a treatment plan, a curative effort. In all curative treatments, prognosis is of utmost importance. Even as the physician changes treatment in the light of progress and relapse, so must the reformatory creations of the law modify their treatments according to the response of the patient. Sometimes sudden and drastic changes of treatment are indicated. As Beccaria pointed out in his Crimes and Punishments,

"in political arithmetic, it is necessary to substitute a calculation of probabilities, for methematical exactness."

Both logic and authority impels the holding under our statutes and system that a parolee is not entitled as of right to notice and hearing before revocation of a parole.

The third question, whether plaintiff is entitled to good time allowance as a matter of law, that is, whether the provisions of Secs. 67-0-10 and 11, U. C. A. 1943, are mandatory on the Board of Pardons, must also be answered in the negative. We have held that since the power to reduce or terminate sentences is exclusive with the Board of Pardons, the Legislature could not reduce the sentences for good conduct. The Board of Pardons has discretion whether or not to allow time off.

"Such allowances suggested by the statute may be helpful guides when no other measure for remission or commutation is available." *Cardisco* v. *Davis, Warden,* 91 Utah 323, 64 P. 2d 216, 220.

But the allowances are not mandatory.

Two further reasons are evident why McCoy cannot obtain good time allowance by habeas corpus. Certainly it must be assumed that when the Board of Pardons commuted a life sentence to twenty-five years, McCoy received the benefit of any good behavior which could redound to his credit. Furthermore, because McCoy has violated his paroles, he has forfeited any claim to good time allowance even with the Board of Pardons, until and unless his future conduct again commends him to the grace and confidence of the Board.

The writ is recalled and the petition for discharge of the prisoner is denied.

McDONOUGH, TURNER, and WADE, JJ., concur.

WOLFE, Justice.

I am not sure that I see any logical reason why a judge is required to grant a probationer a hearing before revoking his probation whilst the Board of Pardons does not need to do so as respects to a parolee. I can agree that the parolee

is so by grace and not by right but no more than a probationer is such by grace and not by right. The judge has utmost discretion to grant or withhold from the convicted defendant probation; so has the Board of Pardons in an application for parole. I have never been sure that *State* v. *Zolantakis*, 72 Utah 251, 269 P. 1006, was correctly decided but as a practical matter I see a difference between one man—a judge—having absolute power to revoke a probation and seven men on a Board having that power. Arbitrariness or capriciousness are not nearly so likely to occur when men of different views and temperaments confer and arrive at a decision after an exchange of ideas than when one person acts with benefit only of such judicial mindedness as he may be endowed with or have cultivated. Precipitant action is more likely to occur. From a practical standpoint it may be better to leave the principles laid down in the Zolantakis case stand.

But I doubt if a distinction between what the Board of Pardons does and what a judge does can be based on the theory that when a judge grants probation either by suspending the execution of sentence or by suspending the imposition of sentence, it becomes part of the judgment. I am not sure that such reasoning is sound. If the judgment is the sentence pronounced, then judgment is complete when it is pronounced. A stay of judgment is hardly part of the judgment. And when stay of imposition of sentence is granted it is even more difficult to reason that such is a part of the judgment. But at all events I concur in the holding that the Board of Pardons did not need to grant a hearing before it acted to revoke the parole.

I am in wholehearted accord with the philosophy contained in the opinion as to the administration of the criminal law and to the effect that law draws its substance from life and experience. I have preached it consistently during my entire incumbency on this bench. At times I had felt that we have indulged in legalism to the detriment of realism and common sense. I welcome the able exposition contained in the opinion of the Chief Justice in that regard.