No. 38,883

In the matter of the application of GUY TABOR for writ of habeas corpus. (GUY TABOR, *Petitioner*, v. ROBERT H. HUDSPETH, Warden of Kansas State Penitentiary, CARL A. B. SWANSON, Parole Officer of Kansas State Penitentiary, and JOHN W. HOOD, Sheriff of Washington County, *Respondents*.)

(250 P. 2d 793)

Opinion filed December 6, 1952.

*J. R. Hyland* and *H. N. Hyland,* both of Washington, were on the briefs for the petitioner (appellant).

*Harold R. Fatzer,* attorney general, and *Paul E. Wilson,* assistant attorney general, were on the briefs for the respondent (appellee).

The opinion of the court was delivered by

PARKER, J.: This is an appeal from an order of the district court of Washington county denying a petition for a writ of habeas corpus.

The case, although commenced in the district court of Washington county against the three respondents above named, challenges the validity of parole revocation proceedings under which petitioner, who had been paroled from the penitentiary, was returned thereto and is now being held therein by the respondent Warden for the purpose of serving the unexpired term of a valid sentence imposed against him by the district court of Washington county for the commission of the crime of statutory rape. Therefore throughout this opinion we shall discuss the issues involved as if it had been commenced against the Warden alone and no other respondents were involved.

Chronologically the events leading up to the controversy, many of which are of little importance and serve only to complete the factual picture, can be stated thus: On October 29, 1949, petitioner entered a plea of guilty to the crime of statutory rape in the district court of Washington county and was sentenced to confinement at hard labor in the Kansas State Penitentiary for a term of not less than one or more than twenty-one years. Some eleven months later, pursuant to his application and in conformity with the provisions of the

statute relating to the granting of paroles, he was granted a parole by the State Board of Administration which was subsequently approved by the Governor. This parole directed the respondent, as Warden, to release petitioner from confinement in the penitentiary but not from legal custody. On or about October 12, 1950, in conformity with the Board's order, the respondent permitted petitioner to leave the penitentiary upon parole and he returned to his wife and home in Washington county. Apparently, so far as known to the prison authorities, petitioner had little if any trouble until sometime during the spring of 1952. The record discloses that on or about March 15, 1952, upon complaint of his wife, he was arrested upon a charge of disturbing the peace and was confined in the county jail. At or about the same time information concerning his arrest was brought to the attention of Carl A. B. Swanson, a parole officer of the penitentiary, who initiated an investigation concerning his conduct. As a result of that investigation Swanson submitted a delinquency report to the respondent in which he reported that prior to his arrest petitioner had been having serious trouble with his wife and stepdaughter, the latter being the minor involved in the matter which had resulted in his being sentenced to the penitentiary, and advised, in substance, that petitioner's threats against his wife and his activities in connection with his stepdaughter were of such serious nature that they could not be overlooked.

The record further reveals that on March 19, 1952, through some arrangements between the parole officer and the prosecuting attorney of Washington county, the criminal complaint which had been filed against petitioner was dismissed and that thereafter the then sheriff of Washington county was instructed to keep petitioner in the county jail until arrangements could be made to return him to the penitentiary as a parole violator.

Following receipt of the parole officer's report the respondent on April 9, 1952, issued his written order for the arrest of the petitioner as a paroled prisoner. Among other things this order recited petitioner had violated the conditions of his parole and directed that he be forthwith arrested and returned to the penitentiary to serve as much of the remainder of his unexpired statutory rape sentence as the Board of Administration should thereafter determine.

Petitioner commenced the instant action on April 8, 1952, by the filing of a petition in which he claimed that he was illegally deprived of his liberty. Thereafter, and obviously after the sheriff had received the respondent's order and was holding petitioner in custody

in compliance with its terms, the petitioner filed an amended petition wherein he attacked the validity of the parole proceedings under which he was then being held on constitutional grounds; charged that he was illegally restrained of his liberty; and asked that the district court issue a writ of habeas corpus discharging him from his unlawful imprisonment. Respondent then filed an answer to the amended petition wherein he denied all claims made respecting the invalidity of the parole revocation proceedings under which petitioner was then being held in custody; described in detail the proceedings resulting in the revocation of petitioner's parole and the issuance of the warrant for his arrest; asserted that such proceedings were valid and gave him the right to hold petitioner in his custody in the penitentiary until he had served the unexpired term of the statutory rape sentence from which he had been paroled; and prayed that the writ be denied.

With issues joined as above indicated the district court found generally against the petitioner and denied the writ. Thereupon petitioner perfected this appeal in which he relies upon three propositions as grounds for reversal of its judgment. In the order we desire to treat them the questions thus raised read:

1. "Has petitioner and appellant been deprived of due process of law by the action of the Warden in revoking his parole without affording a hearing as to whether the parole had been violated?

2. "Is that portion of 62-1525 General Statutes of Kansas of 1949, which authorizes the Warden to revoke paroles and retake and reimprison inmates upon parole, unconstitutional, as being an unreasonable and unlawful delegation of power?

3. "Is the particular agreement such an agreement that it can be terminated and revoked by one of the parties with no adjudication that it has been violated by the other party?"

Inasmuch as the foregoing questions relate to and require construction of G. S. 1949, 62-1525, the provisions thereof, pertinent to their disposition, should be set forth at this point. They read:

"The said prison board shall have power to establish rules and regulations under which prisoners within the penitentiary may be allowed to go upon parole outside the penitentiary building and enclosure, *but to remain while on parole in the legal custody and under the control of the prison board, and subject at any time to be taken back within the enclosure of said penitentiary:* Provided, That no parole shall be granted in any case until the minimum term fixed by law for the offense has expired. *And full power to enforce such rules and regulations and to retake and reimprison any inmate so upon parole is hereby conferred upon the warden, whose order,* certified by the clerk of the prison, with the seal of the penitentiary attached thereto, *shall be a sufficient*

*warrant for the officer named in it to authorize such officer to apprehend and return to actual custody any conditionally released or paroled prisoner, and it is hereby made the duty of all officers to execute said order the same as ordinary criminal process: . . ."* (Emphasis supplied.)

At the outset it will simplify the issues and may as well be said (1) that this court long ago (See *In re Patterson,* 94 Kan. 439, 442, 146 Pac. 1009) held that it is competent for the legislature to provide that a court may, upon information that is satisfactory to it, revoke a parole and summarily remand a convict to prison to serve out a sentence legally imposed and (2) that we have little difficulty in concluding that under and by virtue of the emphasized portions of the statute, heretofore quoted, the legislature has conferred plenary authority upon the respondent, while acting as Warden of the Kansas State Penitentiary, to revoke paroles of convicts still under legal commitment to that institution without a hearing, subject to further orders of the Board of Administration, and in connection therewith to issue warrants for the arrest of such paroled prisoners, and, under that process, have them brought back within the enclosure of the penitentiary.

Having concluded petitioner's parole was revoked in the manner contemplated by the statute we now turn to the first question, whether action in revoking that parole without a hearing was in violation of the constitutional guaranty that no person shall be deprived of his liberty without due process of law.

The answer to this particular question, once—as we have held— it is determined that by legislative fiat respondent has been given authority to revoke paroles of inmates of the penitentiary without a hearing, is no different than where by statute a court has been given authority to revoke a parole or the Chief Executive of a state has been given power to revoke a conditional pardon without a hearing. The result is we have decisions of our own which conclusively establish the revocation of petitioner's parole by respondent without notice or hearing did not result in depriving him of the constitutional guaranty of due process. See *In re Patterson,* supra, which holds:

"A parole granted by the district court or a judge thereof under section 2 of chapter 178 of the Laws of 1907 (Gen. Stat. 1909, § 2460), containing a provision that upon satisfactory information that the conditions of the parole have been violated the court or judge is authorized to revoke the parole and cause the convict to be reimprisoned under the sentence pronounced by the court without notice or hearing, may be revoked by the court or judge and the convict may be recommitted to serve out his sentence without either notice or

hearing, and such action is not a violation of the constitutional guaranty that no person shall be deprived of his liberty without due process of law, nor of the other guaranty that no warrant shall issue except on probable cause supported by oath or affirmation." (Syl.)

The rule that a parole may be revoked and a convict may be recommitted to serve his sentence without notice or hearing without violation of the constitutional guaranty, now under consideration, finds ample support in other jurisdictions as well as our own. General statements to that effect are to be found in 67 C. J. S., Pardons, 619 § 23, where it is said:

"A parolee has no constitutional right to a hearing on the question of revoking his parole; and, in the absence of a statutory provision for notice and hearing, a parole may be revoked without such notice and hearing, whether authority to revoke is vested in the governor, the court or judge granting the parole, the board of parole, prison commissioners, or an adult authority. . . ."

And in 16 C. J. S., Constitutional Law, 1190 § 593, which reads:

". . . So, also, the guaranty of due process of law is not violated by a parole law or by the revocation, or statutory provision for revocation, of a parole, probation, or suspension of execution of sentence, even without a formal trial or hearing or without a judicial determination of guilt of a subsequent offense constituting a violation of a condition of the parole. . . ."

For a decision wherein the validity of a somewhat similar statute was challenged on the same grounds as our own is herein attacked see *Johnson v. Walls, Warden,* 185 Ga. 177, 194 S. E. 380.

For another interesting decision holding that a parolee is not entitled as of right to notice and hearing before revocation of a parole and in which, like our own *In re Patterson,* supra, the court discusses the reasons why a parolee cannot be heard to say that revocation of his parole without notice and hearing results in depriving him of his liberty without due process of law see *McCoy v. Harris, Warden,* 108 Utah 407, 413, 160 P. 2d 721.

Numerous other decisions supporting our conclusion petitioner is not entitled to a writ of habeas corpus on the ground of having been deprived of his liberty without due process of law by reason of the parole revocation proceedings here in question appear in the books but will not be cited because of limits of time and space. However, for the benefit of readers of this opinion interested in pursuing the subject further it should be stated that many of such decisions are digested and may be found listed in American Digest System, Constitutional Law, § 272.

Petitioner's position respecting his second question is that the statute (62-1525), which authorizes the warden to revoke paroles and retake inmates upon parole, is unconstitutional as being an unreasonable and unlawful delegation of power. The trouble with this position, and all arguments advanced in support thereof, is that they wholly ignore petitioner's legal status while outside the walls of the penitentiary on parole. It must be remembered our statute, in clear and unequivocal terms, provides that a convict on parole, although permitted to go outside the prison walls, is still in legal custody and subject at any time to be taken back within that institution. The authorities hold that under such a statute a parolee is still *in custodia legis*, he is subject to the rules and regulations of the penitentiary from which he has been paroled even though permitted to remain outside its walls, and he is subject to the direction and control of the authorities placed in charge of that institution. (See, e. g., 67 C. J. S., Pardons, 610 § 22[b]; *McCoy v. Harris, Warden*, supra; *Johnson v. Walls, Warden*, supra.)

In revoking petitioner's parole, in ordering his arrest, and in having him brought back to the penitentiary the respondent was simply performing powers and duties of prison discipline and management conferred upon him by statute. No one would contend, or, if he should, would do so without success, that respondent cannot constitutionally be delegated the power and authority to supervise and control convicts lawfully confined within the walls of the penitentiary. We are unable to discern any sound reason why, and are cited to no authorities holding he cannot be delegated that same power with respect to convicts whose lawful sentence has not expired but who have been permitted to leave the confines of the penitentiary upon parole under express statutory authority that while they are outside its walls and on parole they are *in custodia legis* and are subject at any time to be taken within the enclosure by order of its warden. Therefore, we have little difficulty in concluding that our statute (G. S. 1949, 62-1525), which, as we have heretofore indicated, authorizes the warden of the Kansas State Penitentiary to revoke paroles and reimprison inmates upon parole, is not unconstitutional on the ground set forth in petitioner's second question.

We have even less difficulty in disposing of contentions advanced by petitioner in support of his third question. Indeed the authorities heretofore cited suffice to require its rejection. Even so we

are inclined to give it further consideration. Heretofore we have pointed out the statute (62-1525), which we pause to note became a part of the agreement under which petitioner was released on parole, expressly provides that a parolee remains in legal custody under control of the prison authorities and is subject to be taken back within the enclosure of the penitentiary at any time without notice and hearing. The authorities all hold that having agreed to such conditions petitioner cannot now complain of them or be heard to say that he was entitled to a hearing on the question whether he had violated the terms and conditions of his parole. See, e. g., *State v. Collins,* 225 Mo. 633, 125 S. W. 465, where it is held:

"By applying for and accepting the terms of a parole, defendant is precluded from assailing the validity of the statute (Sec. 2818, R. S. 1899) which authorizes the court, or judge thereof in vacation, to terminate the parole at any time, without notice to defendant, by merely directing the clerk to make out and deliver to the sheriff or to other proper person a certified copy of the sentence, etc. He cannot contend that the statute is invalid because it authorizes his rearrest without warrant or other process; for, if it is invalid for that reason, his parole was unauthorized, and the judgment is in full force." (Syl. ¶ 2.)

For other authorities to the same effect see *Boaz v. Amrine,* 153 Kan. 614, 113 P. 2d 80; *Bowers v. Wilson,* 143 Kan. 732, 56 P. 2d 1212; *In re McClane,* 129 Kan. 739, 284 Pac. 365; *Gray v. Graham,* 128 Kan. 434, 278 Pac. 14; *In re Patterson,* supra; *Ex parte Horine,* 11 Okla. Crim. Rep. 517, 148 Pac. 825; *McCoy v. Harris, Warden,* supra; 39 Am. Jur., Pardon, Reprieve & Amnesty, 576 § 89.

After a careful review of the record we have been unable to find anything in the claims advanced warranting a conclusion that the trial court erred in holding petitioner had failed to establish grounds for his release in a habeas corpus proceeding. Therefore, its judgment denying the writ must be and it is hereby affirmed.