No. 85,238

STATE OF KANSAS, *Appellee,* v. TIMOTHY A. CARR, *Appellant.*

(53 P.3d 843)

Opinion filed September 13, 2002.

*Cory D. Riddle,* assistant appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with him on the brief for appellant.

*Lesley A. Isherwood,* assistant district attorney, argued the cause, and *Nola Foulston,* district attorney, and *Carla J. Stovall,* attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Defendant Timothy A. Carr claims (1) the district court's imposition of a dispositional departure—incarceration rather than presumptive probation—violated his constitutional rights under *Apprendi v. New Jersey,* 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), and (2) the district court's reasons for departing were not substantial and compelling. These arguments were rejected by the Court of Appeals. *State v. Carr,* 29 Kan. App. 2d 501, 28 P.3d 436 (2001). We granted Carr's petition for review pursuant to K.S.A. 20-3018(b). The State did not cross-petition for review of the Court of Appeals' finding that the district court failed to provide adequate notice of its intent to depart; thus, that issue is not before this court for review. We agree with the Court of Appeals' conclusion that (1) *Apprendi* does not apply to a dispositional departure imposed under K.S.A. 2001 Supp. 21-4716 and (2) the district court's reasons for departing were substantial and compelling.

Carr was arrested on November 23, 1999, 26 days after his release from the Youth Center in Topeka, where he had served a sentence arising from a juvenile adjudication on drug charges. Wichita police officers pulled over Carr after observing him driving without a vehicle license tag. When Carr admitted to driving on a suspended license, he was placed in custody, and the car was impounded and inventoried. A stolen revolver was found in the vehicle's passenger compartment.

Carr was charged with criminal possession of a firearm pursuant to K.S.A. 2001 Supp. 21-4204(a)(4). He entered into a plea agreement in which the State agreed to recommend a mid-range sentence in the applicable grid box under the Kansas Sentencing Guidelines Act (KSGA), K.S.A. 21-4701 *et seq.,* no fine, and probation under the guidelines presumption. At sentencing on April

13, 2000, the district court noted that Carr had a criminal history score of E. Criminal possession of a firearm in violation of K.S.A. 2001 Supp. 21-4204(a)(4) is a severity level 8 offense. K.S.A. 2001 Supp. 21-4204(c). Neither Carr nor the State disputed the criminal history score or the offense severity level.

After soliciting comments from Carr, Carr's attorney, and the prosecutor, the district judge immediately and without notice exercised the discretion granted him under the KSGA, refused to grant Carr probation, and imposed a prison sentence of 15 months. The district judge stated that Carr was "not amenable to rehabilitation," observing that: (1) the firearms offense occurred shortly after Carr's release from the Youth Center, (2) Carr had failed at juvenile probation, and (3) Carr had a lengthy criminal history of drug possession. The district judge authorized placement at Labette Correctional Conservation Camp (Labette). The parties made no objections. Carr appealed. The record is not clear as to whether Carr was actually placed at Labette. Carr's brief on appeal suggests he was not.

Before the Court of Appeals, Carr sought reversal of his dispositional departure sentence. Carr claimed that the dispositional departure by the district court violated his constitutional rights under *Apprendi*; that the district court gave inadequate notice of its intent to depart; and that the district court's reasons for departure were not substantial and compelling.

The Court of Appeals (1) held that *Apprendi* did not apply to an upward dispositional departure, (2) found that the reasons for departure were substantial and compelling, and (3) vacated Carr's sentence and remanded the case for resentencing on the basis that the district court did not provide adequate notice of its intention to depart on its own volition under K.S.A. 21-4718(b).

The primary issue before us is whether the United States Supreme Court intended *Apprendi* to apply to upward dispositional departures, *i.e.*, imposing prison rather than granting probation or parole, under the KSGA. Because we are discussing a dispositional departure under the KSGA, the fact that Carr's conviction resulted from a guilty plea rather than a jury verdict does not change our analysis. See *State v. Cody*, 272 Kan. 564, 35 P.3d 800 (2001), and

*State v. Kneil,* 272 Kan. 567, 35 P.3d 797 (2001). Carr's challenge involves a question of law, over which we have unlimited review. See *State v. Crow,* 266 Kan. 690, Syl. ¶ 2, 974 P.2d 100 (1999).

To support his assertion that dispositional departures and durational departures are similarly affected by *Apprendi,* Carr cites *State v. Gould,* 271 Kan. 394, 23 P.3d 801 (2001). In *Gould,* this court declared the Kansas scheme for imposing upward durational departure sentences void under *Apprendi.* 271 Kan. 394, Syl. ¶¶ 2, 3, and 6. Carr contends that the rationale behind the holding in *Gould,* though couched in the context of an upward durational departure of a sentence, included dispositional as well as durational departures.

The Court of Appeals, recognizing that although *Gould* had concluded that the upward durational departure provision "of K.S.A. 2000 Supp. 21-4716 was unconstitutional on its face," stated:

"[I]t is difficult to see how a *dispositional* departure such as Carr's fits under the rationale of *Apprendi.* Pending contrary explicit guidance from the Supreme Court, we find *Gould* inapplicable to upward *dispositional* departures. It does not constitute an alternative basis for vacating the sentence in this case. Indeed, we view the Supreme Court's post-*Gould* decision in *State v. McKay,* 271 Kan. 725, 26 P.3d 58 (2001), as implicitly supportive of our reading of *Gould.* In *McKay,* the Supreme Court reached the merits of an upward dispositional departure sentence rather than reversing it immediately as violative of the Sixth and Fourteenth Amendments to the United States Constitution.

"Furthermore, our decision on this issue appears philosophically and analytically consistent with that in *State v. Conley,* 270 Kan. 18, 30-35, 11 P.3d 1147 (2000), *cert. denied* 532 U.S. 932 (2001), which held that a district judge's decision to impose a hard 40 sentence did not run afoul of *Apprendi.* In *Conley,* the hard 40 sentence potentially altered the mode of service of the defendant's life sentence, delaying initial parole eligibility from 25 years to 40 years. Here the *dispositional* departure also merely altered the mode of service of Carr's sentence; it did not extend its length. *Gould* did not affect the district judge's power to alter the mode of service of the offender's sentence." 29 Kan. App. 2d at 505.

The Court of Appeals looked to *State v. McKay,* 271 Kan. 725, 26 P.3d 58 (2001), for guidance. In *McKay,* the district court imposed a prison term rather than the statutory presumptive grant of probation. The Court of Appeals reversed the district court, concluding that the particular fact presented—that McKay had absconded for 2 months during the pendency of his case—*did not*

*constitute a substantial and compelling reason to impose a dispositional departure.* We granted the State's petition for review. We agreed with the Court of Appeals and vacated McKay's sentence. 271 Kan. at 731.

*McKay* was decided 1 year after *Apprendi* and only 2 months after our decision in *Gould. Apprendi* was neither briefed nor argued by counsel. The dispositional departure in *McKay* was vacated, not upheld. Thus, the issue of whether *Apprendi* applied to dispositional departures was not before us.

In deciding that *Apprendi* did not apply to upward dispositional departures, the Court of Appeals also relied upon this court's decision in *State v. Conley,* 270 Kan. 18, 11 P.3d 1147 (2000), *cert. denied* 532 U.S. 932 (2001). In *Conley,* we found that the imposition of a hard 40 sentence based on a fact not found by the jury does not increase a defendant's maximum sentence of life imprisonment imposed under K.S.A. 21-4706(c). The hard 40 limited the lower end of Conley's life sentence. Thus, Conley's hard 40 sentence violated neither the Due Process Clause of the United States Constitution nor his right to trial by jury under the Sixth Amendment to the United States Constitution or § 5 of the Kansas Constitution Bill of Rights. *Conley,* 270 Kan. 18, Syl. ¶ 3.

Our reasoning in *Conley* was based on *McMillan v. Pennsylvania,* 477 U.S. 79, 91 L. Ed. 2d 67, 106 S. Ct. 2411 (1986). *McMillan* held that facts that do not increase a defendant's punishment beyond that authorized by statute need not be proven to a jury beyond a reasonable doubt. Because the hard 40 did not increase the length of Conley's life sentence and because the *Apprendi* Court had refused to overturn *McMillan,* we concluded that Conley's 40-year mandatory minimum sentence did not violate *Apprendi. Conley,* 270 Kan. at 32-35. Thus, the reasoning of *Conley* is also not dispositive of the issue at hand.

The key question is whether *Apprendi* applies to dispositional departures. *Apprendi* considered the situation of a New Jersey defendant who pled guilty to possession of a firearm. The trial court, under a separate "hate crime" statute, found by a preponderance of the evidence that Apprendi committed the crime with a purpose to intimidate the victim because of race. The trial judge, based on

this finding, imposed a sentence of 12 years' imprisonment. The departure extended Apprendi's sentence beyond the 5 to 10 years authorized by the firearm statute. Apprendi appealed.

The *Apprendi* Court opened its analysis of durational departures in dramatic fashion, stating:

"At stake in this case are constitutional protections of surpassing importance: the proscription of any deprivation of liberty without 'due process of law,' Amdt. 14, and the guarantee that '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury,' Amdt. 6. Taken together, these rights indisputably entitled a criminal defendant to 'a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.' " 530 U.S. at 476-77.

The United States Supreme Court then surveyed the historical role of the sentencing judge at common law. It noted that the English trial judge of the late 18th century had very little discretion in sentencing because the substantive criminal law tended to be sanction-specific; it prescribed a particular sentence for each offense. 530 U.S. at 479. This preserved, according to the Supreme Court, "[t]he defendant's ability to predict with certainty the judgment from the face of the felony indictment," which "flowed from the invariable linkage of punishment with crime." 530 U.S. at 478.

Shifting its analysis to more modern sentencing schemes, the Supreme Court reasoned:

"We should be clear that nothing in this history suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute. We have often noted that judges in this country have long exercised discretion of this nature in imposing sentence *within statutory limits* in the individual case. [Citations omitted.]" 530 U.S. at 481.

Ultimately, however, the *Apprendi* Court concluded:

"The historic link between verdict and judgment and the consistent limitation on judges' discretion to operate within the limits of the legal penalties provided highlight the novelty of a legislative scheme that removes the jury from the determination of a fact that, if found, exposes the criminal defendant to a penalty *exceeding* the maximum he would receive if punished according to the facts reflected in the jury verdict alone." 530 U.S. at 482-83.

In determining whether Carr's assertion as to a dispositional departure is correct, it is important to note that in *Apprendi,* the United States Supreme Court held: "Other than the fact of a prior conviction, any fact that increases the *penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.*" (Emphasis added.) 530 U.S. at 490. Further, "the relevant inquiry is one not of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" 530 U.S. at 494.

We applied *Apprendi* to upward durational departure sentences for the first time in *Gould.* Gould was convicted of three counts of child abuse. The district court imposed durational departure sentences of 68 months for two of the counts, to run consecutive to each other, and a presumptive sentence of 34 months for the remaining count, to run concurrent with the other two sentences.

Gould contended that "K.S.A. 2000 Supp. 21-4716 was unconstitutional on its face" in light of *Apprendi.* The State argued that *Apprendi* did not apply in Gould's case. According to the State, the maximum sentence allowed by law was not defined by the KSGA but was instead defined by the strictures of the "double-double" rule contained in K.S.A. 2000 Supp. 21-4720(b)(4). We rejected the State's argument, stating:

"Under *Apprendi,* it does not matter how the required finding is labeled, but whether it exposes the defendant to a *greater punishment* than that authorized by the jury's verdict. [Citation omitted.] Gould's jury verdict 'authorized' a sentence of 31 to 34 months for each child abuse conviction. By imposing two 68-month sentences, the district court *went beyond the maximum sentence* in the applicable grid box and exposed Gould to punishment greater than that authorized by the jury's verdict." 271 Kan. at 410-11.

We then applied *Apprendi* and concluded:

"The Kansas scheme for imposing upward departure sentences, embodied in K.S.A. 2000 Supp. 21-4716, is unconstitutional on its face. Gould received a sentence beyond the statutory maximum based upon a court finding of certain aggravating factors found by a preponderance of the evidence. *Apprendi,* on the other hand, requires 'any fact *that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted* to a jury, and proved beyond a reasonable doubt.' [Citation omitted.] Any other procedure 'is an unacceptable

departure from the jury tradition that is an indispensable part of our criminal justice system.' [Citation omitted.]" 271 Kan. at 413.

*Apprendi*, and likewise *Gould*, only involved the imposition of an upward durational departure sentence and did not encompass dispositional departures. This court must now determine whether an upward dispositional departure, *i.e.*, imposing prison rather than granting probation or parole, like an upward durational departure sentence, increases the penalty for a crime beyond the prescribed statutory maximum, thus triggering the protections afforded in *Apprendi*.

When enacting the KSGA, the legislature restricted a sentencing judge's discretion in imposing prison confinement and in imposing nonimprisonment custody or supervision. Under the KSGA, a sentencing judge is required to impose a presumptive sentence and in some instances a dispositional departure, *i.e.*, grant probation, unless the judge finds substantial and compelling reasons to depart. K.S.A. 2001 Supp. 21-4716(a). The Kansas Legislature, when enacting the KSGA, created exceptions to the guidelines, specifically providing that although probation is presumed for a particular offense, a defendant is presumed to be sentenced to prison in other instances. See, *e.g.*, K.S.A. 17-1267(a); K.S.A. 2001 Supp. 21-4603d(f); K.S.A. 2001 Supp. 21-4704a(g); K.S.A. 2001 Supp. 21-4704a(h); K.S.A. 2001 Supp. 21-4704a(k); K.S.A. 2001 Supp. 21-4704a(l). As a further safeguard of public safety, the legislature has provided the sentencing judge with discretion to deny the statutory presumptive grant of probation. See K.S.A. 2001 Supp. 21-4716(b). It must be noted that if the KSGA did not provide the sentencing judge with discretion to deny the statutory presumptive grant of probation, offenders of certain crimes would always be granted probation. Application of *Apprendi* to upward dispositional departures would require a jury to make a finding beyond a reasonable doubt before any defendant falling within a presumptive probation gridbox could be denied probation.

The answer to our question requires that we analyze the difference between an upward durational departure, which increases a sentence and a dispositional departure, which determines where an individual's sentence will be supervised.

In *Hudson v. State*, 273 Kan. 251, 42 P.3d 150 (2002), the defendant asserted that she was entitled to credit on her sentence for time spent on parole. Our unanimous court recognized that

"[p]arole is a privilege, not a constitutional right. *Parker v. State*, 247 Kan. 214, 217, 795 P.2d 68 (1990). Credit for time spent in jail in determining the service of the term of confinement is wholly a matter of statute. *State v. Babcock*, 226 Kan. 356, 358, 597 P.2d 1117 (1979). In *Segarra* [*v. State*, 430 So. 2d 408 (Miss. 1983)] , the court stated:

'The mere passage of days with one's liberty in fact restricted does not necessarily count as time served on one's sentence. What is and what is not a criminal's expiating punishment is a creation of law. Which days count, and which days do not is likewise determined by law. The fact of restriction, no matter how real, counts for nothing unless the law says otherwise.' 430 So. 2d at 410.

. . . .

"When determining a prisoner's term of confinement courts have relied on the analogous situation of the court's statutory power to grant probation and whether to give credit for time spent on bail when revoking probation.

'Just as a sentence of probation requires that some portion of the defendant's imprisonment or fine be suspended, so parole requires the conditional forgiveness of jail time and the possibility that this jail time might be re-imposed.' *Hill* [*v. State*], 22 P.3d at 27 [Alaska App. (2001)].

'A person does not serve a prison sentence while on probation or parole any more than he does while free on bail. In both instances, there are certain restrictions generally on the person's movements but the person's condition, as the Court observed in *Morrissey v. Brewer*, (1972) 408 U.S. 471, 482, 92 S. Ct. 2593, 2601, 33 L. Ed. 2d 484 is "very different from that of confinement in a prison." ' *Hall* [*v. Bostic*], 529 F.2d at 992 [(4th Cir. 1975)].

"In the case of probation, the Kansas Court of Appeals reviewed K.S.A. 22-3716(2) (Weeks) and held that giving the court discretion to require the defendant to serve a sentence in full without regard to time spent on probation if a violation of probation is established did not violate the Double Jeopardy Clause of the Fifth Amendment. *State v. Snook*, 1 Kan. App. 2d 607, 609, 571 P.2d 78 (1977). The *Snook* court stated:

'As the Kansas Supreme Court has indicated, however, probation represents a grace period during which the defendant has the opportunity to demonstrate that rehabilitation can be achieved without incarceration. See *In re Patterson*, 94 Kan. 439, 146 Pac. 1009; *In re Henry Millert, Petitioner*, 114 Kan. 745, 220 Pac. 509; *In re McClane*, 129 Kan. 739, 284 Pac. 365. The court stated in *In re Millert, Petitioner*, supra at 747, "The term of parole [by the court] is one

of probation, offered the delinquent as a substitute for punishment in the usual way. One who accepts the substitute does so subject to all the conditions imposed by law and by the court." When the petitioner in that case failed to satisfy all of the conditions of parole he was subject to confinement under the original sentence "precisely as though no parole had been granted." (*Id.*) See also, *In re McClane*, supra, where the court refused to allow credit for time served in jail as a condition of probation; and *Bowers v. Wilson*, 143 Kan. 732, 56 P.2d 1212, where the court denied petitioner credit for time spent on probation.' 1 Kan. App. 2d at 609." 273 Kan. at 255-56.

We have previously concluded that a person on probation or parole is not serving a sentence. Probation from serving a sentence is an act of grace by the sentencing judge and, unless otherwise required by law, is a privilege and not a matter of right. *State v. Lumley*, 267 Kan. 4, Syl. ¶ 1, 977 P.2d 914 (1999). This court has repeatedly held that probation is separate and distinct from the sentence. *State v. Van Winkle*, 256 Kan. 890, Syl. ¶ 2, 889 P.2d 749 (1995); *State v. Dubish*, 236 Kan. 848, Syl. ¶ 2, 696 P.2d 969 (1985). Probation and parole are dispositions alternate to the serving of a sentence, and neither probation nor parole increase or decrease the sentence required to be imposed by statute. *Cf. Hudson*, 273 Kan. at 251.

The determination that probation is separate and distinct from the sentence is demonstrated by the fact that an individual can be placed on probation for more or less time than the length of his or her underlying prison sentence. See K.S.A. 2001 Supp. 21-4611. Additionally, even when an individual's probationary term has almost been satisfied and probation is revoked, the person must still serve the entire length of the underlying prison sentence and will be denied credit for time spent on probation unless it was time spent in a county jail or a residential treatment center. See K.S.A. 21-4614a. It is also noteworthy that an individual may either accept probation and be subject to serving the entire sentence if his or her probation is revoked or reject probation and elect to serve a known sentence.

As required by K.S.A. 2001 Supp. 21-4204(c) and K.S.A. 2001 Supp. 21-4705, Carr was sentenced to serve 15 months. The district judge then found compelling reasons not to place Carr on probation, exercised discretion, and refused to grant Carr probation. See

K.S.A. 2001 Supp. 21-4716. Although the judge refused to grant Carr probation, Carr's prison sentence of 15 months was not increased.

It is important to note that no federal or state court has applied *Apprendi* to the question of granting dispositional departures that result in imprisonment rather than probation or parole. In making its claim that no federal or state court has refused to apply *Apprendi* to dispositional departures, the dissent here fails to recognize that a change in a sentencing structure to apply *Apprendi* protections to dispositional departures would require either a judicial decision or a legislative act. For example, the Kansas Legislature enacted, following our decision in *Gould, Apprendi* protections for upward durational departures. See L. 2002, ch. 170 (amending K.S.A. 2001 Supp. 21-4716 and K.S.A. 21-4718). The dissent cites no state or federal legislative act to support its broad claim that other jurisdictions provide *Apprendi* protections when probation is presumed but not granted.

We conclude that *Apprendi* applies only to upward durational departures of a sentence imposed under K.S.A. 2001 Supp. 21-4716. The distinction between probation and the imposition of a prison sentence renders the United States Supreme Court's *Apprendi* decision inapplicable to a sentencing judge's decision to impose a dispositional departure prison sentence rather than to grant probation.

As for Carr's contention that the Court of Appeals erred in finding that the reasons for departure were substantial and compelling, we agree with the Court of Appeals. In this case, both the frequency of Carr's past criminal activity and the fact he was released from the youth facility such a short time before his arrest for his current crime constituted substantial and compelling reasons for departure. See *Carr*, 29 Kan. App. 2d at 504.

The decision of the Court of Appeals vacating Carr's sentence and remanding for resentencing is affirmed because the district court failed to give adequate notice of its intent to depart. The judgment of the district court is reversed.

DAVIS, J., not participating.

BRAZIL, S.J., assigned.

SIX, J., dissenting: I agree with the majority's analysis of *State v. McKay*, 271 Kan. 725, 26 P.3d 58 (2001), and *State v. Conley*, 270 Kan. 18, 11 P.3d 1147 (2000), *cert. denied* 532 U.S. 932 (2001). However, I dissent from the majority's conclusion that *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), does not apply to upward dispositional departures under K.S.A. 2001 Supp. 21-4716.

After this case was docketed in the Court of Appeals, we held in *State v. Gould*, 271 Kan. 394, 413, 23 P.3d 801 (2001): "The Kansas scheme for imposing upward departure sentences, embodied in K.S.A. 2000 Supp. 21-4716, is unconstitutional on its face." The plain language of *Gould* states that the mechanism for imposing upward departures in 21-4716 is void and cannot be used. Here, the district court used 21-4716 to impose an upward departure sentence of imprisonment. The statute has been declared unconstitutional on its face. Carr's sentence, like Gould's, cannot stand. Carr's appeal was pending at the time *Gould* was filed; thus, *Gould's* holding applies to Carr. 271 Kan. at 414. *Gould* alone disposes of the case at hand.

The majority distinguishes *Gould* on the basis that it involved an upward durational departure. It is not clear to me how such a distinction can be used to salvage a statute declared unconstitutional on its face.

Our counterparts in New Jersey have aptly observed that when it comes to *Apprendi*, "its specific application in the context of modern, highly-structured sentencing statutes raises difficult issues for reviewing courts." *State v. Johnson*, 166 N.J. 523, 530, 766 A.2d 1126 (2001). These difficulties are increased by the novelty of the issues presented and the lack of specific guidance from higher courts. The majority here observes that "no federal or state court has applied *Apprendi* to the question of granting dispositional de-

partures that result in imprisonment rather than probation or parole." The obvious counterpoint is that no federal or state court has refused to apply *Apprendi* to dispositional departures. As courts grapple with the application of *Apprendi* to particular sentencing schemes, the results depend as much upon the content of particular sentencing statutes as upon the content of *Apprendi.* Quite simply, the question before us is one that turns upon our interpretation of the Kansas Sentencing Guidelines Act (KSGA), K.S.A. 21-4701 *et seq.*, and it is one we can answer absent the benefit of other federal or state decisions.

The majority focuses on the maxim that probation is an act of grace by the sentencing judge and, unless otherwise required by law, is granted as a privilege and not as a matter of right. The difficulty with this reasoning is that it ignores the sweeping changes made by the legislature in crafting the KSGA. The arrival of the KSGA requires us to extend the analysis of whether *Apprendi* applies to dispositional departures beyond the application of a traditional maxim whose origin predates the KSGA.

The majority also points out the difference between a durational departure which results in a lengthier prison term and a dispositional departure which results in a prison term rather than release on probation. On this, we agree. The qualitative difference between prison and probation is obvious and striking. *Hudson v. State*, 273 Kan. 251, 255, 42 P.3d 150 (2002) (While the demands of probation place certain restrictions on a person's movements, these are very different from the restrictions of confinement in prison.). The legislature doubtless kept the difference between the two in mind when crafting the KSGA, which was designed not only to alleviate prison overcrowding but also to standardize sentencing in areas where courts historically exercised considerable discretion. See *State v. Gonzales*, 255 Kan. 243, 249, 874 P.2d 612 (1994). Indeed, our courts have recognized that "the imposition of the Kansas Sentencing Guidelines Act . . . has curbed the district court's discretion in awarding prison or nonimprisonment sentences." *State v. Thomas*, 26 Kan. App. 2d 171, 174, 981 P.2d 1178 (1999).

*Apprendi* held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Here, there is no dispute that the district court found, by a preponderance of the evidence, that Carr was not amenable to probation. The district court then used this finding to impose a prison sentence rather than presumptive probation as dictated by the guidelines. The question becomes whether a prison term, imposed where the severity level of the crime and the criminal history score call for presumptive probation, is an increased penalty beyond the statutory maximum and subject to *Apprendi*.

The State argues that the presumptive sentence is not the maximum sentence allowed by law. The State urges instead that the statutory maximum sentence for Carr's crime is a prison term of a length defined by the numbers in the appropriate grid box. The State invites us to define Carr's maximum sentence by the numbers inside the grid box, while ignoring the shading of the box, where both the numbers and the shading were put there by the legislature. This argument is difficult to reconcile.

The majority addresses the issue by pointing to the sentencing court's historical latitude in awarding probation. This approach is incomplete, as it does not take into account the complexities of the KSGA and current sentencing schemes.

Before the adoption of the KSGA in 1993, felony crimes were defined by statute and assigned a class designation. The statutes set forth a minimum and maximum sentence for each class of felony and noncontrolling criteria for fixing minimum terms. K.S.A. 21-4501 (1988 Ensley); K.S.A. 21-4606 (1988 Ensley). The district court was authorized to release a defendant on probation in almost any case. K.S.A. 1992 Supp. 21-4603(2)(c). One notable exception required the district court to impose a prison sentence where a defendant was convicted of certain crimes in which he or she used a firearm. K.S.A. 1992 Supp. 21-4618. Even this exception had an escape clause, allowing the district court to release a defendant on probation despite the use of a firearm where imposition of a prison

term "would result in manifest injustice." K.S.A. 1992 Supp. 21-4618(3).

In short, pre-1993 sentencing statutes bestowed upon district judges a nearly unlimited power to award probation in any case. Probation then was indeed a matter of grace.

The KSGA radically changed the Kansas sentencing paradigm by limiting the scope of judicial discretion. These limits appeared as a sentencing guidelines grid, which dictated sentences according to the severity level of the crime and the defendant's criminal history. The legislature provided for departures from these sentences only in certain narrowly defined situations.

K.S.A. 2001 Supp. 21-4704a contains the sentencing guidelines grid for nondrug crimes. Each grid box contains numbers representing the range of months of imprisonment. Some boxes on the grid are shaded, indicating that sentences to be imposed within these grid boxes are "presumptive probation." Other boxes contain diagonal lines, indicating "border boxes" where the presumptive sentence is neither probation nor imprisonment. The balance of the boxes are free of markings other than the numbers, indicating that sentences imposed thereunder are "presumptive imprisonment." The drug crimes grid is similarly structured. See K.S.A. 2001 Supp. 21-4705.

K.S.A. 2001 Supp. 21-4704a(d) says:

"The sentencing guidelines grid for nondrug crimes as provided in this section defines presumptive punishments for felony convictions, subject to judicial discretion to deviate for substantial and compelling reasons and impose a different sentence in recognition of aggravating and mitigating factors as provided in this act."

K.S.A. 2001 Supp. 21-4704a(e)(1) says:

"The sentencing court has discretion to sentence at any place within the sentencing range. The sentencing judge shall select the center of the range in the usual case and reserve the upper and lower limits for aggravating and mitigation factors insufficient to warrant a departure."

K.S.A. 2001 Supp. 21-4704a(f) explains the difference between the shaded and nonshaded portions of the sentencing grid:

"Each grid block states the presumptive sentencing range for an offender whose crime of conviction and criminal history place such offender in that grid block. If an offense is classified in a grid block below the dispositional line, the presumptive disposition shall be nonimprisonment. If an offense is classified in a grid block above the dispositional line, the presumptive disposition shall be imprisonment. If an offense is classified in grid blocks 5-H, 5-I or 5-G, the court may impose an optional nonprison sentence . . . .

"Any decision made by the court regarding the imposition of an optional nonprison sentence of the offense is classified in grid blocks 5-H, 5-I or 5-G shall not be considered a departure and shall not be subject to appeal."

Finally, K.S.A. 21-4703(s) says that the sentencing range is "the sentencing court's discretionary range in imposing a nonappealable sentence."

The definition of "sentencing range" is telling, as it dictates that the district court's discretion extends only as far as a nonappealable sentence. K.S.A. 21-4703(s). A nonappealable sentence includes "[a]ny sentence within the presumptive sentence for the crime." K.S.A. 21-4721(c)(1). Only a departure sentence is subject to appeal. K.S.A. 21-4721(a).

Carr received a prison term despite the fact that the severity level of the crime and his criminal history score placed him in a presumptive probation box. Carr did not receive a presumptive sentence. These is no dispute that Carr's dispositional departure sentence was subject to appeal. Carr's sentence is outside the sentencing range for his crime and beyond the purview of the district court's discretion.

The provisions of the KSGA read together make clear that the presumptive sentence for a crime is not only defined by the numbers in the grid box alone, but also by whether the box lies above or below the dispositional line. If the crime severity and criminal history dictate a sentence within a shaded grid box, the presumptive sentence is probation. The legislature created and placed the dispositional line and, in doing so, defined the maximum punishment for a crime not only in terms of the length of a sentence but also in terms of whether the punishment itself was to be prison or probation.

The fact that Carr was not amenable to rehabilitation was a court-made finding by a preponderance of the evidence. This

court-made finding sends Carr to prison. In my view, prison time qualifies as an increased penalty beyond probation, the KSGA-prescribed statutory maximum for Carr. Under *Apprendi*, such a finding cannot be used as support for an upward dispositional departure which increases the penalty for Carr's crime beyond the statutory maximum. *Gould*, 271 Kan. at 412-13. I would vacate Carr's upward dispositional departure sentence on this basis and remand for resentencing.

LARSON, J., joins in the foregoing dissenting opinion.