NOT DESIGNATED FOR PUBLICATION

No. 124,298

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

GUSTAVO AUGUSTO CARRILLO,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; WESLEY K. GRIFFIN, judge. Opinion filed June 24, 2022. Appeal dismissed.

*Jennifer C. Roth*, of Kansas Appellate Defender Office, for appellant.

*Viet Q. Le*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., GREEN and GARDNER, JJ.

PER CURIAM: Gustavo Augusto Carrillo challenges his sentence. Based on the Kansas Sentencing Guidelines Act, Carrillo's sentence for aggravated assault was presumptive probation, but a special rule in K.S.A. 2020 Supp. 21-6804(h) changes that presumption to imprisonment if the defendant commits any person felony with a firearm. But the district court may still order probation if it makes certain findings on the record. Carrillo argues that the district court did not understand that it could order probation because it erroneously stated it could not find "substantial and compelling reasons to depart." We agree that the district court misspoke yet we find no reversible error in this

1

respect. Carrillo also argues that K.S.A. 2020 Supp. 21-6804(h) violates *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), but the Kansas Supreme Court has previously rejected this argument. We thus dismiss this appeal.

*Factual and Procedural Background*

The State charged Gustavo Augusto Carrillo with aggravated assault, criminal possession of a firearm, three counts of criminal threat, two counts of criminal damage to property, stalking, theft, harassment by telephone, four counts of domestic battery, and two counts of criminal trespass. These charges stem from encounters with his ex-girlfriend, Vanesa Sanchez, the mother of his infant child. Some of the charges stem from actions Carrillo took near or toward his infant child.

At Carrillo's plea hearing, the district court conducted a thorough plea colloquy. The district court told Carrillo:  (1) it did not have to accept the proposed plea agreement; (2) the maximum prison sentences and fees the district court could sentence him to; (3) what his potential criminal history score could be and how the sentencing grid works; and (4) about postrelease supervision.

Carrillo pleaded guilty to one count of aggravated assault with a deadly weapon, one count of criminal threat, two counts of domestic battery, and one count of endangering a child. The State proffered the factual basis for each crime. For aggravated assault, the State said:

> "According to Ms. Sanchez, during [September 20th through September 28th], the defendant pointed a gun at her. That is a silver semiautomatic handgun with a laser site on it. This was done at Ms. Sanchez's apartment located in Wyandotte County, Kansas. It was pointed at her with the laser pointer on her body. This pointing placed Ms. Sanchez in reasonable apprehension of immediate bodily harm."

The plea agreement included Carrillo's agreement to a no contact order with the victim. It provided that the counts would run consecutively, that the State would recommend the aggravated box, and that Carrillo agreed to serve 60 days of "shock time" as a condition to probation. In exchange for Carrillo's plea, the State agreed to dismiss the remaining charges in this case and to dismiss case 2020 CR 0777. The plea agreement also stated that Carrillo fully understood that (1) the plea agreement did not bind the district court, (2) the court could reject the agreement, (3) the court could impose any sentence within the statutory limits, and (4) the court could grant or deny probation independently of the agreement between Carrillo and the State.

The district court told Carrillo at the plea hearing that the law required him to register with the Wyandotte County Sheriff's Office for 15 years because of the special rule about aggravated assault with a deadly weapon. The district court also informed Carrillo that the law requires that any time a crime is committed with a deadly weapon, the presumptive sentence is prison, and that the law permits his attorney to move for a departure or to ask the court to impose probation instead of prison.

At the sentencing hearing, the State asked the district court not to follow the plea agreement's recommendation of probation because Carrillo had violated the agreement by trying to contact Sanchez. Instead, the State asked the district court to impose the aggravated 13-month sentence for aggravated assault and a 7-month sentence for criminal threat.

Carrillo agreed with the presentence investigation report showing his criminal history score was I. The district court asked Carrillo's counsel whether he filed a motion to depart because the deadly weapon charge was "mandatory prison," but the court swiftly rephrased stating, "it's—recommendation is prison." Carrillo's counsel responded he did not know Carrillo's sentence was presumptive prison or subject to a special rule, and he did not think he needed to file an actual motion. The district court corrected him,

3

stating "the law says a motion shall be filed." Carrillo's counsel stated he would file such a motion after the hearing, yet he never did so. The record shows Carrillo's counsel did not file a motion to depart or for reconsideration after sentencing.

Carrillo asked the district court to follow the plea agreement because he had no contact with Sanchez. Carrillo's counsel argued that the only potential contact the State had shown was two incomplete phone calls made from Carrillo's jail PIN number to Sanchez' phone number. Yet no contact had occurred because Sanchez did not answer. Later, Carrillo told the district court he was remorseful for what had happened and was taking responsibility for his crimes.

The district court found that Carrillo's attempts to call Sanchez were enough to breach the plea agreement's no contact clause, so it chose not to follow the plea agreement's recommendation of probation. It then stated that because Carrillo had violated the plea agreement, it found no "substantial and compelling reasons to depart to probation in this case."

The district court sentenced Carrillo to

- 13 months in jail followed by 12 months of postrelease supervision for aggravated assault;
- 7 months in jail followed by 12 months of postrelease supervision for criminal threat;
- two separate sentences of 6 months in jail for two separate offenses of domestic battery; and
- 12 months in jail for endangering a child.

The district court ordered the felony counts to run consecutively and the misdemeanor counts to run concurrently with each other and with the felony counts, for a controlling

4

sentence of 20 months' imprisonment. The district court also imposed a mandatory 15-year registration requirement under KORA for Carrillo's aggravated assault conviction, and stated that each domestic battery conviction included a mandatory $200 fine.

The district court marked the box for special sentencing rule #1 on the journal entry, indicating the defendant had used a deadly weapon while committing a person felony. The same box was also checked on the presentence investigation report provided by the State. The district court also checked the journal entry box showing Carrillo must register as a violent offender because he committed a person felony with a firearm.

Carrillo timely appeals.

*Did the District Court Err in Sentencing Carrillo?*

Carrillo concedes appellate courts generally cannot review a presumptive sentence, such as he received. K.S.A. 2020 Supp. 21-6820(c) provides that an appellate court shall not review on appeal a sentence for a felony committed after July 1, 1993, that is (1) within the presumptive Guidelines sentence for the crime, or (2) the result of a plea agreement between the State and the defendant which the district court approved on the record. See *State v. Kinder*, 307 Kan. 237, 239-40, 408 P.3d 114 (2018) (no jurisdiction to review presumptive sentences). Additionally, under K.S.A. 2020 Supp. 21-6804(q), "[a]ny decision made by the court regarding the imposition of an optional nonprison sentence shall not be considered a departure and shall not be subject to appeal."

But if a district court misinterprets its own authority to impose a sentence, the appellate court may take up the limited question of whether the district court properly interpreted the sentencing statute in sentencing the defendant. See *Kinder*, 307 Kan. at 240. Carrillo relies on this exception.

5

*Analysis*

K.S.A. 2020 Supp. 21-6804(h) provides: "When a firearm is used to commit any person felony, the offender's sentence shall be presumed imprisonment. The court may impose an optional nonprison sentence as provided in subsection (q)." K.S.A. 2020 Supp. 21-6804(q) provides:

> "'[A]n optional nonprison sentence' is a sentence which the court may impose, in lieu of the presumptive sentence, upon making the following findings on the record:
>
> (1) An appropriate treatment program exists which is likely to be more effective than the presumptive prison term in reducing the risk of offender recidivism; and
>
> (2) the recommended treatment program is available and the offender can be admitted to such program within a reasonable period of time; or
>
> (3) the nonprison sanction will serve community safety interests by promoting offender reformation.
>
> "Any decision made by the court regarding the imposition of an optional nonprison sentence shall not be considered a departure and shall not be subject to appeal."

*Deadly Weapon v. Firearm*

Whether a defendant used a firearm in the commission of a crime—which triggers a presumptive prison sentence—is a matter to be determined by the district court at sentencing, and an appellate court must affirm such determination if it is supported by competent evidence. *State v. Craddick*, 49 Kan. App. 2d 580, 581, 311 P.3d 1157 (2013). But Carrillo does not argue that the district court failed to find on the record that he used a firearm while committing aggravated assault. See K.S.A. 2020 Supp. 21-6804(h); *Craddick*, 49 Kan. App. 2d at 581.

Instead, Carrillo first argues that the district court erred by finding he used a "deadly weapon" rather than finding he used a "firearm." But the district court

6

specifically mentioned the "special rule because of the gun" moments later, so this argument is unpersuasive.

*Departure v. Optional Nonprison Sentence*

Carrillo focuses the bulk of his appeal on the district court's statement that it must rely on a departure finding to place Carrillo on probation. Carrillo argues that the district court erred by requiring him to show substantial and compelling reasons to depart to probation, because the statute states that any decision on an optional nonprison sentence is not a departure.

The State counters that the district court's interpretation of the sentencing statute was supported by the plain language of the statute and that the district court simply misspoke when it stated there were no "substantial and compelling reasons to depart to probation in this case" instead of just saying the district court chose to sentence Carrillo under the statutory presumption in K.S.A. 2020 Supp. 21-6804(h). We agree.

Carrillo's presentence investigative report recommended the district court apply the special sentencing rule for presumptive prison. Carrillo did not object to that report.

In Carrillo's case, aggravated assault is a level 7 felony. K.S.A. 2020 Supp. 21-5412(b)(1). And because Carrillo's criminal history score was I, the sentencing guideline showed his punishment to be "presumptive probation" with an underlying prison sentence range of 13, 12, or 11 months. K.S.A. 2020 Supp. 21-6804. But under that same statute, any person felony committed with a firearm changes the sentence to "presumptive prison"—whether the crime is a severity level 1 or 10. K.S.A. 2020 Supp. 21-6804(h). This "trigger," as it is often called, does not change the length of the defendant's sentence. In every box on the grid there are three numbers indicating the aggravated, standard, and mitigated sentences applicable to that box—aptly called the presumptive sentencing

7

range. K.S.A. 2020 Supp. 21-6804. So, even though the person felony firearm "trigger" changes the presumption to prison, it does not require that a defendant's sentence exceed the length of punishment set out in the grid. See K.S.A. 2020 Supp. 21-6804(h). And, ultimately, the presumption controls unless the district court exercises its discretion to order probation upon making additional factual findings. See K.S.A. 2020 Supp. 21-6804(q).

Here, under the aggravated assault conviction on the journal entry, the district court checked the boxes for "Presumptive Prison," "Special Rule Applies," and noted on the second page that "Rule 1- Person Felony Committed with a Firearm" applied in this case. The district court also check-marked box "12" which asks whether the defendant committed the current crime with a "deadly weapon." On the "Special Rules Supplemental Page," the district court checked the box for Rule "1" indicating the defendant committed a person felony with a firearm. And finally, on the Kansas Open Records Act registration page, the district court checked the box finding Carrillo must register as a violent offender because the district court made a finding on the record that Carrillo committed a person felony with a deadly weapon. The district court did not check any boxes suggesting a departure was granted or denied.

True, the district court mentioned the special rule when discussing Carrillo's counsel's failure to request a "departure," and "departure" is not an appropriate term to use here. As Carrillo contends, "[a]ny decision made by the court regarding the imposition of an optional nonprison sentence [for a personal felony committed with a firearm] shall not be considered a departure and shall not be subject to appeal." See K.S.A. 2020 Supp. 21-6804(q).

But Carrillo's case is unlike those in which we have found a district court failed to understand its sentencing authority. In those cases, the courts expressly acknowledged, although erroneously, their lack of authority. See, e.g., *State v. Warren*, 297 Kan. 881,

8

884, 304 P.3d 1288 (2013) (District judge questioned whether a small amount of drugs can be "'a legally sufficient reason'" to depart, but concluded, "'I do not believe that meets the statutory factor, or factors[,] and [is] legally sufficient to constitute a substantial and compelling reason for departure, the amount of drugs involved.'"); *State v. Cisneros*, 42 Kan. App. 2d 376, 377, 212 P.3d 246 (2009) (District judge said, "'I don't have the power to lower [the sentence]. That is not within my power here.'"); *State v. Colbert*, 24 Kan. App. 2d 756, 756, 953 P.2d 1058 (1998) (District judge, referring to presumptive imprisonment provision for use of a firearm in K.S.A. 21-4704[h], said: "'I don't see any substantial and compelling reason to place Mr. Colbert at Labette. *And I find that there has to be a substantial and compelling reason* because a handgun was used in this offense . . . .'").

Nothing in our record approaches an acknowledgment by the district court that its hands were tied and that it lacked the power to impose a sentence of probation. Rather, the court's statements reflect that it understood the full range of its sentencing power, including probation.

The context of the district court's statement is important. The district court's misstatement was made when the court found that Carrillo had violated the plea agreement's no contact clause. The district court stated: "I feel there was a violation of the plea agreement. Yes, he only attempted to. I am finding that's enough. Because of that, there is not substantial and compelling reasons to depart to probation in this case." And later the district court stated: "Again, just to make it clear, because of the violation technically, attempted violation, which obviously is all that is needed for any appeal issue, I believe in my feeling, does away with the plea agreement."

We reject Carrillo's invitation to interpret the district court's statements at face value. To find no "substantial and compelling reasons to depart to probation" because Carrillo violated the plea agreement makes little sense, as breaching or not breaching a

plea agreement is unlikely to ever be a compelling reason to depart to probation. See K.S.A. 2020 Supp. 21-6815 (listing non-exclusive aggravating and mitigating factors to be considered in determining whether substantial and compelling reasons exist to depart). And a cursory search of Kansas caselaw reveals no case in which a defendant's violation of or compliance with a plea agreement was found to be a substantial and compelling reason to depart.

The district court properly explained the law to Carrillo at his plea hearing, demonstrating the court's awareness of its sentencing authority. It explained that "the law requires that any time a crime is committed with a deadly weapon that the presumptive sentence is prison," but that the law allowed his attorney to file a motion to depart, or to ask the court to impose probation instead of prison.

> "[T]he law also allows for an attorney on behalf of their client to ask for or seek a departure or a change of that underlying law, and that, in fact, is what [defense counsel] will be doing for you in this case. It's not automatic, but he will be filing the paperwork asking that this court on the plea to aggravated assault not order a sentence in the Department of Corrections, but change or depart from that to require probation instead. Is that your understanding of what your attorney will be doing for you?"

Carrillo replied, "Yes, Your Honor."

Although the court used the term "depart," its language showed it used that term to mean "change . . . from [presumed prison] to require probation instead."

The issue at sentencing arose because defense counsel was not aware that presumptive prison applied based on Carrillo's use of a gun:

> "THE COURT:  . . . One question I just—looking through my stuff— my paperwork rather than stuff—[counsel] did you file a motion to depart? Because it was

10

done with a deadly weapon, it's mandatory prison. Not mandatory, it's—recommendation is prison.

> "[COUNSEL]:  I didn't know there was a presumptive prison on this one.
>
> "THE COURT: On an aggravated assault with a gun?
>
> "[COUNSEL]:  The gun makes it where—
>
> "THE COURT:  Yeah, special rule because of the gun.
>
> "[COUNSEL]:  Is it special rule? But I didn't think I needed to file an actual motion.
>
> "THE COURT:  The rule— the law says a motion shall be filed. So your comments concerning the—
>
> "[COUNSEL]:  Judge, I will file one right after this case. I would ask the court to follow the plea agreement."

Counsel then discussed Carrillo's alleged plea agreement violation but asked the court to follow the original plea agreement of probation. The colloquy shows that the district court understood that Carillo's recommended sentence was prison due to the "special rule because of the gun," but that recommendation could be changed by a motion. Yet no motion was filed and no basis for an optional nonprison sentence under K.S.A. 2020 Supp. 21-6804(q) was argued.

Although the court's language may have been inartful in referring to probation as a departure instead of as an "optional nonprison sentence," see K.S.A. 2020 Supp. 21-6804(q), our review of the entire proceeding shows that the court understood its statutory authority to sentence Carrillo. See *Warren*, 297 Kan. at 887. Because Carrillo got a presumptive sentence, we lack jurisdiction to address Carrillo's sentencing argument. K.S.A. 2021 Supp. 21-6820(c); K.S.A. 2020 Supp. 21-6804(q).

*Did the District Court Violate Carrillo's Sixth and Fourteenth Amendment Rights by Sentencing Him to Prison Pursuant to K.S.A. 2020 Supp. 21-6804(h)?*

*Preservation and Jurisdiction*

Carrillo next argues, for the first time on appeal, that K.S.A. 2020 Supp. 21-6804(h) violates *Apprendi v. New Jersey*, 530 U.S. 466, and the Sixth and Fourteenth Amendments to the United States Constitution. Generally, a defendant must raise a specific constitutional challenge to a statute before the district court to preserve the issue for appeal. Carrillo concedes he did not raise this issue to the district court but contends two of the exceptions to the general rule apply: (1) the error involves only a question of law on undisputed facts and is determinative of the case; and (2) considering *Apprendi* issues is necessary to serve the ends of justice. See *State v. Johnson*, 309 Kan. 991, 995, 441 P.3d 1036 (2019).

Carrillo's invocation of these exceptions is cursory, and he fails to specify whether he raises a facial or as-applied constitutional challenge to the sentencing statute. He simply argues that *State v. Carr*, 274 Kan. 442, 452, 53 P.3d 843 (2002), was wrongly decided because the sentencing statute violates *Apprendi*. Assuming for the sake of argument that Carrillo raises a facial challenge, we take up Carrillo's unpreserved *Apprendi* issue for the limited purpose of determining whether this court has jurisdiction to review his presumptive sentence. See *State v. Huerta*, 291 Kan. 831, 840, 247 P.3d 1043 (2011). Similarly, though Carrillo failed to preserve the issue in the district court, we choose to review the unpreserved claim because *Apprendi* protects the fundamental right to a jury trial. See 530 U.S. at 476-77 (guarantee of right to jury trial); *State v. Unrein*, 47 Kan. App. 2d 366, 369, 274 P.3d 691 (2012) (considering *Apprendi* issue for first time on appeal to prevent denial of fundamental rights).

*Does K.S.A. 2020 Supp. 21-6804(h) Violate* Apprendi*?*

Under *Apprendi*, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. The portion of K.S.A. 2000 Supp. 21-4716 (recodified at K.S.A. 2021 Supp. 21-6815) authorizing upward *durational* departure sentences without the right to a jury determination of aggravating and mitigating factors has been held unconstitutional because it violates due process. *State v. Johnson*, 286 Kan. 824, 843-44, 190 P.3d 207 (2008) (citing *State v. Gould*, 271 Kan. 394, 23 P.3d 801 [2001]). But an upward *dispositional* departure sentence, such as Carrillo received, is not unconstitutional under *Apprendi* because such a departure does not extend the penalty beyond the statutory maximum, as our Supreme Court held in *Carr*, 274 Kan. at 452.

Carrillo argues that *Carr* is wrong because the firearm "trigger" in K.S.A. 2020 Supp. 21-6804(h) violates *Apprendi* and thus the Sixth and Fourteenth Amendments. But our Supreme Court rejected that very argument in *State v. Beasley*, 274 Kan. 718, 723, 56 P.3d 803 (2002).

In *Beasley*, a jury found the defendant guilty of aggravated assault and aggravated battery. At the sentencing hearing, the district court found Beasley had used a firearm in the commission of the crimes and, under K.S.A. 2001 Supp. 21-4704a(h), imposed two presumptive sentences of 12 months each.

At the time of Beasley's crimes, K.S.A. 2001 Supp. 21-4704a(h) stated:

> "When a firearm is used to commit any person felony, the offender's sentence shall be presumed imprisonment. The court may impose an optional nonprison sentence upon making a finding on the record that the nonprison sanction will serve community

13

safety interests by promoting offender reformation. Any decision made by the court regarding the imposition of the optional nonprison sentence shall not be considered a departure and shall not be subject to appeal."

Beasley appealed, arguing K.S.A. 2001 Supp. 21-4704a(h) was unconstitutional because the fact that he used a firearm while committing the crimes should have been proven to a jury beyond a reasonable doubt before the district court could impose a presumptive prison sentence. In reviewing Beasley's claim, the Supreme Court cited *Carr*, its decision from earlier that year. *Carr* found that *Apprendi* did not apply to dispositional departures because imposing a prison term in a presumptive probation case does not increase the sentence beyond the statutory maximum. 274 Kan. at 723. The *Beasley* court found that the district court's imposition of the presumptive prison term based on the statutory trigger did not exceed the statutory maximum punishment for Beasley's crime and therefore *Apprendi* did not apply. *Beasley*, 274 Kan. at 723.

The sentencing statute the district court relied on in sentencing Carrillo is nearly identical to the sentencing statute in *Beasley*. See K.S.A. 2020 Supp. 21-6804(h). The only substantial difference between the statutes is that the revised Kansas Sentencing Guidelines Act separated the "presumed imprisonment" sentence from the "optional nonprison" sentence and added the nonprison option of a "treatment program." Compare K.S.A. 2001 Supp. 21-4704a(h) with K.S.A. 2020 Supp. 21-6804(h), (q). That addition is immaterial here, as Carrillo never gave the district court any facts or argument relevant to a treatment program, as is necessary for a court's exercise of discretion in imposing an optional nonprison sentence under K.S.A. 2020 Supp. 21-6804(q).

Because the Kansas Supreme Court has not strayed from the *Carr* or *Beasley* decisions, we follow the *Beasley* court's reasoning. See *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017) (finding appellate courts are duty bound to follow Kansas Supreme Court precedent). We thus join other panels of this court which have

14

declined to revisit *Carr.* See *State v. Moss*, No. 121,730, 2020 WL 6372514, at *2 (Kan. App. 2020) (unpublished opinion), *rev. denied* 313 Kan. 1045 (2021); *State v. Parker*, No. 121,966, 2020 WL 5740885, at *2 (Kan. App. 2020) (unpublished opinion), *rev. denied* 313 Kan. 1045 (2021); *State v. Baker*, No. 121,727, 2020 WL 4913283, at *3 (Kan. App. 2020) (unpublished opinion), *rev. denied* 312 Kan. 893 (2021).

Carrillo received a constitutionally permissible presumptive sentence of imprisonment; thus, this court lacks jurisdiction to review this issue. See *Baker*, 2020 WL 4913283, at *3.

Appeal dismissed.